James C. Martin (SBN 83719)
jcmartin@reedsmith.com
Mary J. Hackett (*appearing pro hac vice*)
mhackett@reedsmith.com
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

David S. Reidy (SBN 225904)
dreidy@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

Attorneys for Defendants Bank of America, N.A. and Bank of America Corporation

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELLEN STOODY-BROSER, An Individual, Individually And On Behalf Of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION,<br><br>*Defendants.* | Case No. CV 08 2705 JSW<br><br>DEFENDANTS' NOTICE OF MOTION AND AMENDED MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [FED. R. CIV. P. 12(b)(6)]; PROPOSED ORDER<br><br>Date: May 15, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 2, 17th Floor<br>Compl. Filed: May 29, 2008<br>Trial Date: None<br><br>*Honorable Jeffrey S. White* |

## TABLE OF CONTENTS


Page

I. SUMMARY OF ARGUMENT ....1

II. THE COURT SHOULD EXERCISE ITS INHERENT POWER AND DISMISS PLAINTIFF'S CLAIMS FOR FORUM SHOPPING. ....2

A. The Consortium And The Continued Pattern Of Forum Shopping. ....2

1. Even After Judge Magnuson's Finding Of Forum Shopping, This Conduct Continued. ....4

2. Judge Magnuson Exercises His Inherent Powers To Admonish The Consortium. ....5

3. Discovery Confirms That This Case Continues The Pattern Of Forum Shopping. ....6

a. The circumstantial evidence is compelling. ....6

b. The direct evidence is overwhelming. ....7

B. The Court Should Dismiss The Complaint Because Plaintiff And Her Counsel Have Engaged In Forum Shopping. ....13

III. PLAINTIFF'S STATE LAW CLASS CLAIMS ARE PREEMPTED BY SLUSA. ....15

A. SLUSA Preempts "Covered Class Actions" Based On State Law That Are Predicated Upon Misrepresentations, Omissions, Or The Use Of A Deceptive Or Manipulative Scheme "In Connection With" The Purchase Or Sale Of A "Covered Security." ....15

1. Plaintiff's Allegations Involve A "Covered Class Action" Based On State Law And Involve The Purchase And Sale Of A "Covered Security." ....18

2. Plaintiff's Allegations Involve Misstatements And Omissions Of Material Facts And A Deceptive And Manipulative "Scheme" By The Bank "In Connection With" The Purchase Of Affiliated Mutual Fund Shares. ....19

3. Plaintiff's Allegations That The Bank Charged Excessive Fees In Connection With Affiliated Mutual Fund Investments Support The Conclusion That SLUSA Preempts Her Claims. ....21

B. Plaintiff's Allegations Satisfy All The Elements Of SLUSA Preemption, And Her Complaint Is A Failed Attempt At Artful Pleading That Will Not Evade SLUSA. ....22

IV. CONCLUSION ....25


REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**EXHIBITS**

| | |
|---|---|
| Exhibit 1 | Chart Identifying Cases Brought By Consortium, Plaintiffs' Counsel and Others |
| Exhibit 2 | *Williams v. Bank of America, N.A.* Dismissal Order |
| Exhibit 3 | Excerpt from *Siepel v. Bank of America, N.A.* and *Kutten v. Bank of America, N.A.* Dismissal Hearing |
| Exhibit 4 | *Luleff v. Bank of America, N.A.* Complaint |
| Exhibit 5 | Excerpt from *Williams v. Bank of America, N.A.* March 24, 2008 Hearing |
| Exhibit 6 | January 31, 2008 Greenfield and Howard E-mail |
| Exhibit 7 | *Martinez v. Bank of America, N.A.* Complaint |
| Exhibit 8 | *Martinez v. Bank of America, N.A.* Amended Complaint |
| Exhibit 9 | *Kutten v. Bank of America, N.A* Order Awarding Fees and Costs |
| Exhibit 10 | Murray Declaration in *Kutten v. Bank of America, N.A.* |
| Exhibit 11 | McCarthy Declaration in *Kutten v. Bank of America, N.A.* |
| Exhibit 12 | *Kutten v. Bank of America, N.A.* Order Denying Reconsideration |
| Exhibit 13 | Objections of Greenfield & Goodman to Subpoena in *Kutten v. Bank of America, N.A.* |
| Exhibit 14 | February 28, 2009 Cobrinik and Howard E-mail |
| Exhibit 15 | Various E-mails Showing Sharing Pleadings and Other Documents |
| Exhibit 16 | January 27, 2009 Cotchett, Pitre & McCarthy Letter |
| Exhibit 17 | February 18, 2009 Cotchett, Pitre & McCarthy Letter |
| Exhibit 18 | Plaintiffs' Counsel's Objections and Responses to Subpoenas and Privilege Logs |
| Exhibit 19 | Consortium's Subpoena Responses |
| Exhibit 20 | December 19, 2007 Howard and Greenfield E-mail |
| Exhibit 21 | March 7, 2007 Hamburg and Howard E-mail |
| Exhibit 22 | April 25, 2007 Hamburg and Howard E-mail |
| Exhibit 23 | May 8, 2007 Howard and Greenfield E-mail |
| Exhibit 24 | April 27, 2007 Hamburg and Howard E-mail |
| Exhibit 25 | February 28, 2008 Hamburg and Murray & Howard E-mail |
| Exhibit 26 | March 14, 2008 Cobrinik and Howard E-mail |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

| | |
|---|---|
| Exhibit 27 | April 28, 2008 Greenfield and Howard E-mail |
| Exhibit 28 | July 15, 2008 Howard and Greenfield E-mail |
| Exhibit 29 | May 28, 2008 Greenfield and Howard E-mail |
| Exhibit 30 | Various E-mails Sharing Depositions and Hearing Transcripts, and Draft Pleadings |
| Exhibit 31 | November 16, 2006 Greenfield and Howard E-mail |
| Exhibit 32 | April 13, 2007 Hamburg and Howard E-mail |
| Exhibit 33 | March 7, 2007 Hamburg and Howard E-mail |
| Exhibit 34 | March 13, 2007 Hamburg, Greenfield, Howard and Fishbein E-mail |
| Exhibit 35 | April 7, 2008 Cobrinik and Howard E-mail |
| Exhibit 36 | September 18, 2006 Greenfield and Howard E-mail |
| Exhibit 37 | E-mails Reflecting Consortium Meetings |
| Exhibit 38 | E-mails Reflecting Consortium Exchanges and Discussions |
| Exhibit 39 | February 18, 2009 Cobrinik Letter Responding to Subpoena |
| Exhibit 40 | April 14, 2008 Howard and Cobrinik E-mail |
| Exhibit 41 | April 22, 2008 Howard and Cobrinik E-mail |
| Exhibit 42 | April 24, 2008 Howard and Greenfield E-mail |
| Exhibit 43 | February 12 & March 3, 2009 Letters from the Bank Counsel Requesting Missing Attachments to E-mails |
| Exhibit 44 | Comparison of *Stoody-Broser v. Bank of America, N.A.* Complaint and *Luleff v. Bank of America, N.A.* Second Amended Complaint |
| Exhibit 45 | July 14, 2008 Greenfield and Murray E-mail |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Araujo v. John Hancock Life Ins. Co.*,
206 F.Supp.2d 377 (E.D.N.Y. 2002) ....................23

*Beckett v. Mellon Investor Servs., LLC*,
No. 06-5245, 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006)....................21

*Behlen v. Merrill Lynch*,
311 F.3d 1087 (11th Cir. 2002) ....................18, 21, 23

*Brooks v. Wachovia Bank, N.A.*,
No. 06-00955, 2007 U.S. Dist. LEXIS 68079 (E.D. Pa. Sept. 14, 2007), *aff'd*, 2009 U.S. App. LEXIS 3096 (3rd Cir. Feb. 18, 2009)....................2

*Dommert v. Raymond James Fin. Servs., Inc.*,
No. 06-0102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007)....................21, 24

*Dudek v. Prudential Securities, Inc.*,
295 F.3d 875 (8th Cir. 2002) ....................21, 22, 23

*Estate of Vail v. First of America Trust Co.*,
722 N.E. 2d 248 (Ill. App. Ct. 1999)....................16

*Falkowski v. Imation Corp.*,
309 F.3d 1123 (9th Cir. 2002) ....................17

*Felton v. Morgan Stanley Dean Witter & Co.*,
429 F.Supp.2d 684 (S.D.N.Y. 2006) ....................23, 24

*Hernandez v. City of El Monte*,
138 F.3d 393 (9th Cir. 1998) ....................13, 14

*Horattas v. Citigroup Financial Markets Inc.*,
532 F.Supp.2d 891(W.D. Mich. 2007) ....................22

*Hughes v. LaSalle Bank, N.A.*,
419 F. Supp. 2d 605 (S.D.N.Y. 2006), *vacated on jurisdictional grounds*, No. 06-3778, 2007 WL 4103680 (2nd Cir. Nov. 19, 2007) ....................2, 3, 16

*In re Edward Jones Holders Litigation*,
453 F.Supp.2d 1210 (C.D. Cal. 2006) ....................15, 17, 18, 23, 24

*In re Salomon Smith Barney Mutual Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ....................21

*Keilhotz v. Superior Fireplace Co.*,
No. 08-00836, 2008 WL 5411497 (N.D. Cal. Dec. 29, 2008) ....................13, 14

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
199 F.Supp.2d 993 (C.D. Cal. 2002)....................15, 18

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Kurz v. Fidelity Management & Research Co.*,
No. 07-cv-709, 2008 WL 2397582 (S.D. Ill. June 10, 2008), *aff'd*, No. 08-2733, slip op. (7th Cir. Feb. 23, 2009) ....................24

*Kutten v. Bank of America*,
No. 04-0244, 2006 WL 1520588 (E.D. Mo. May 26, 2006) ....................2, 6, 20

*Kutten v. Bank of America, N.A.*
Civ. Nos. 04-0244, 06-0937 (PAM), 2008 WL 4838152 (E.D. Mo. Nov. 6, 2008) ....................1, 6

*Kutten v. Bank of America, N.A.*,
No. 06-cv-0937, 2007 WL 2485001 (E.D. Mo. Aug. 29, 2007), *aff'd*, 530 F.3d 669 (8th Cir. 2008), *cert. denied,* 129 S.Ct. 598 (2008) ....................2, 3, 7, 20, 23, 24

*Lane v. City of Emeryville,*,
No. 93-16646, 1995 U.S. App. Lexis 11629 (9th Cir., May 16, 1995) ....................13

*Lander v. Hartford Life & Annuity Ins. Co,*,
251 F.3d 101 (2nd Cir. 2001) ....................17

*Luleff v. Bank of America, N.A.*, No. 06-1435 (S.D. N.Y.) ....................4, 5, 6, 7

*McDermott v. Toyota Motor Sales Co., Ltd.*,
487 F. Supp. 484 (E.D. Tenn. 1980) ....................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
547 U.S. 71 (2006) ....................17

*Press v. Quick & Reilly, Inc.*,
218 F.3d 121 (2d Cir. 2000) ....................21

*Rabin v. JPMorgan Chase Bank, N.A.*,
No. 06- 5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007) ....................2, 20

*Reinke v. Bank of America*,
No. 04 -01758, 2005 WL 3454428 (E.D. Mo. Dec. 16, 2005) ....................2

*Rowinski v. Salomon Smith Barney, Inc.*,
398 F.3d 294 (3d Cir. 2005) ....................23

*Sedlacek v. Morgan Whitney Trading Group, Inc.*,
795 F. Supp. 329 (C.D. Cal. 1992) ....................13

*Segal v. Fifth Third Bank, N.A.*,
No. 07-0348, 2008 WL 819290 (S.D. Ohio Mar. 25, 2008), *appeal pending* ....................2, 5, 20, 24, 25

*Siepel v. Bank of America, N.A.*,
239 F.R.D. 558 (E.D. Mo. 2006), *aff'd*, 526 F.3d 1122 (8th Cir. 2008) ....................1, 2, 3, 20, 24

*Spencer v. Wachovia Bank, N.A.*,
No. 05-81016, 2006 WL 3408043 (S.D. Fla. May 10, 2006) ....................2, 20, 22

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Steward v. Dow Corning Corp.*,
No. 92-1105, 1992 U.S. Dist. LEXIS 4048 (D. Kan. Mar. 13, 1992) .....13

*U.S. v. DeNardi Corp.*,
167 F.R.D. 680 (S.D. Cal. 1996) .....13

*U.S. v. Schwimmer*,
892 F.2d 237 (2nd Cir. 1989) .....13

*U.S. Mortgage, Inc. v. Saxton*,
494 F.3d 833 (9th Cir. 2007) .....18, 23

*Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*,
341 F. Supp. 2d 69 (D.P.R. 2004) .....13

*Wells Fargo Bank, N.A. v. Superior Court of San Francisco County*,
159 Cal. App. 4th 381 (Cal. App. 1st Dist. 2008) .....2, 4, 15, 20

*Williams v. Bank of America, N.A.*, No. 02-15454AH, slip op. (Fla. Cir. Ct. 15th Jud. Cir. Sept. 10, 2007) .....2

*Zografos v. Qwest Comms. Corp.*,
225 F. Supp. 2d 1217 (D. Or. 2002) .....15

**Statutes**

15 U.S.C. § 77p(b) .....15, 18

15 U.S.C. § 77r(b)(2) .....18

15 U.S.C. § 77z-1 .....17

15 U.S.C. § 78bb(f)(1) .....15, 18, 23

15 U.S.C. § 78bb(f)(5) .....18

Investment Company Act of 1940, 15 U.S.C. § 80a-1, et. seq.. .....18

Section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 .....17

Cal. Bus. & Prof. Code § 17200 .....17

Cal. Financial Code § 1561.1 .....16

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) .....15

**Other Authorities**

J. Langbein, *Questioning the Trust Law Duty of Loyalty: Sole Interest or Best Interest?*,
114 Yale L.J. 929, 972-73 (March 2005) .....16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## NOTICE AND MOTION

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

On May 15, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 2, 17th Floor, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Bank of America, N.A. and Bank of America Corporation will and hereby do move to dismiss the claims contained in Plaintiff's Complaint on file in this action. Defendants' Amended Motion to Dismiss is brought pursuant to the Court's inherent power to dismiss a case for forum shopping and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants' Amended Motion is based upon this Notice and Amended Motion, the attached Memorandum of Points and Authorities, the pleadings on file with the Court in this matter, and upon such other and further argument as the Court may consider at the hearing.

DATED: April 3, 2009

Respectfully submitted,

REED SMITH LLP

By /s/ Mary J. Hackett
James C. Martin
Mary J. Hackett
David S. Reidy

*Attorneys for Defendants Bank of America, N.A. and Bank of America Corporation*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS

### I. SUMMARY OF ARGUMENT

Forum shopping undermines the integrity of the legal system and burdens courts and litigants with vexatious lawsuits. And, when the abuse of the legal process becomes pervasive, as it has here, a court is empowered to dismiss a complaint. This case is the last of ten putative class actions filed against Bank of America, N.A. and Bank of America Corporation (collectively, the "Bank" or "Defendants") by a consortium of attorneys (the "Consortium") asserting the same class claims. Each one followed on the heels of a case previously dismissed or abandoned. With an "ample record" before him as to the first six cases filed, Judge Paul Magnuson saw this conduct for what it is – forum shopping – and held that it provided grounds for dismissal. *See, e.g., Siepel v. Bank of America, N.A.*, 239 F.R.D. 558 (E.D. Mo. 2006), *aff'd*, 526 F.3d 1122 (8th Cir. 2008). When the filings continued (including the filing of this case), Judge Magnuson admonished this conduct, exercised his inherent authority and ordered the Consortium to pay the Bank's fees and costs. *See Kutten v. Bank of America, N.A.*, Civ. Nos. 04-0244, 06-0937 (PAM), 2008 WL 4838152 (E.D. Mo. Nov. 6, 2008). Although Plaintiff's counsel here represented to Judge Magnuson and this Court that they had only "limited contact" with the Consortium, did not participate in this pattern of forum shopping, and did not share in their litigation strategy, discovery has revealed that Plaintiff's counsel actively worked with the Consortium to file this case and continue the pattern of forum shopping Judge Magnuson admonished. This Court accordingly should exercise its inherent power, dismiss this litigation and bring this vexatious conduct to an end.

Apart from forum shopping, like the many cases filed before, Plaintiff asserts state law class claims on behalf of a nationwide class of trust beneficiaries, alleging that the Bank, as trustee for her trust account, devised an unlawful "scheme" to enrich itself by investing her trust assets in its affiliated mutual funds. And just as in the cases filed before, the Securities Litigation and Uniform

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Standards Act of 1998 ("SLUSA") requires dismissal of Plaintiff's state law class claims because Plaintiff's allegations trigger the preemptive effect of that statute.[1]

## II. THE COURT SHOULD EXERCISE ITS INHERENT POWER AND DISMISS PLAINTIFF'S CLAIMS FOR FORUM SHOPPING.

### A. The Consortium And The Continued Pattern Of Forum Shopping.

With leave of this Court and over Plaintiff's vigorous objections, the Bank was permitted to conduct discovery concerning whether this action continued a pattern of forum shopping, engaged in by a consortium of attorneys, condemned and sanctioned by Judge Magnuson in Missouri federal Court.[2] While Plaintiff's counsel took pains to frustrate discovery, the documents produced, even those that are heavily redacted, establish that this action continued that pattern.

The Consortium is a group of lawyers (including Attorneys Richard Greenfield, Daniel Cobrinik, Steven Hamburg, and David Brower) who have asserted the same claims in sixteen cases on behalf of the same putative class against Bank of America and four other banks in nine different courts in Missouri (five cases), California (three cases), Pennsylvania (one case), Ohio (one case), Illinois (one case), New York (three cases) and Florida (two cases). *See* Exhibit 1 (chart identifying the various cases).

---

1 The many cases dismissing the similar asserted claims include: *Spencer v. Wachovia Bank, N.A.*, No. 05-81016, 2006 WL 3408043 (S.D. Fla. May 10, 2006) (granting motion to dismiss); *Reinke v. Bank of America*, No. 04-01758, 2005 WL 3454428 (E.D. Mo. Dec. 16, 2005) (same); *Kutten v. Bank of America*, No. 04-0244, 2006 WL 1520588 (E.D. Mo. May 26, 2006) (same); *Siepel v. Bank of America, N.A.*, 239 F.R.D. 558 (E.D. Mo. 2006) (same), *aff'd*, 526 F.3d 1122 (8th Cir. 2008); *Brooks v. Wachovia Bank, N.A.*, No. 06-00955, 2007 U.S. Dist. LEXIS 68079 (E.D. Pa. Sept. 14, 2007) (same), *aff'd*, 2009 U.S. App. LEXIS 3096 (3rd Cir. Feb. 18, 2009); *Rabin v. JPMorgan Chase Bank, N.A.*, No. 06-5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007) (same); *Kutten v. Bank of America, N.A.*, No. 06-0937, 2007 WL 2485001 (E.D. Mo. Aug. 29, 2007) (same), *aff'd*, 530 F.3d 669 (8th Cir. 2008); *Segal v. Fifth Third Bank, N.A.*, No. 07-348, 2008 WL 819290 (S.D. Ohio Mar. 25, 2008) (same), *appeal pending*; and *Wells Fargo Bank, N.A. v. Superior Court of San Francisco County*, 159 Cal. App. 4th 381 (Cal. App. 1st Dist. 2008) (filed by the attorneys representing Plaintiff here) (directing trial court to grant demurrer); *Hughes v. LaSalle Bank, N.A.*, 419 F. Supp.2d 605 (S.D. N.Y. 2006) (granting motion to dismiss), *vacated on jurisdictional grounds*, No. 06-3778, 2007 WL 4103680 (2nd Cir. Nov. 19, 2007); *Williams v. Bank of America, N.A.* , No. 02-15454AH, slip op. (Fla. Cir. Ct. 15th Judicial Cir. Sept. 10, 2007) (Exhibit 2) (same).

2 Judge Magnuson is the former Chief Judge of the United States District Court of Minnesota. He was sitting by designation of the Chief Judge for the Court of Appeals for the Eighth Circuit.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The filings began in 2002 when Messrs. Greenfield and Cobrinik filed a case against LaSalle Bank, which was ultimately dismissed. *See Hughes v. LaSalle Bank, N.A.*, 419 F. Supp.2d 605 (S.D. N.Y. 2006) (granting motion to dismiss), *vacated on jurisdictional grounds*, No. 06-3778, 2007 WL 4103680 (2nd Cir. Nov. 19, 2007). The next six filings are detailed in the *Siepel* opinion, and all asserted similar class claims against the Bank and all were filed at the behest of Mr. Greenfield and the Consortium.[3] *See Siepel*, 239 F.R.D. at 561-64. In late 2006, in *Siepel*, Judge Magnuson recounted the history of prior cases filed against the Bank by the Consortium and exposed the Consortium's forum shopping and vexatious litigation practices:

> The record provides ample evidence that Plaintiffs are forum shopping. Plaintiffs' counsel began filing lawsuits against the Bank four years ago seeking to certify a nationwide class to challenge the practices at issue in this litigation. They filed five cases in four states prior to commencing this action. Three were voluntarily dismissed just before the class certification deadline. Two were dismissed because the plaintiffs failed to plead the amount-in-controversy requirements. The record shows that Plaintiffs have filed numerous cases, voluntarily dismissed them in order to avoid court-imposed deadlines and unfavorable rulings, and reasserted the dismissed claims in this case.

*Siepel,* 239 F.R.D. at 564.

Judge Magnuson dismissed the amended complaint in *Siepel* based upon SLUSA preemption and also denied the plaintiffs leave to file yet another amended complaint to try to plead around SLUSA. *Siepel*, 239 F.R.D. at 571. In the words of Judge Magnuson, "it would be unjust to provide Plaintiffs another attempt to plead their claims. Plaintiffs in this action have filed seven complaints against Defendants, two in this action and five in other actions now dismissed . . . . Plaintiffs have had ample opportunity to plead their case, and the Court will not allow Plaintiffs to shilly-shally in an attempt to avoid dismissal." *Id.* The Court of Appeals affirmed the dismissal decisions in both *Siepel* and another Consortium case, *Kutten II*. *See Siepel v. Bank of America., N.A.*, 526 F.3d 1122 (8th Cir. 2008); *Kutten v. Bank of America, N.A.*, 530 F.3d 669 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 598 (2008).

---

3 These actions included *Williams v. Bank of America, Kutten v. Bank of America, Arnold v. Bank of America, Reinke v. Bank of America, Siepel v. Bank of America, Kutten II v. Bank of America, Barnhart v. Bank of America*. *See id.* at 561-64; *see also* Exhibit 1 (chart identifying the various cases).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

While these actions were pending, Plaintiff's counsel here were pressing similar claims against Wells Fargo Bank in *Richtenburg v. Wells Fargo Bank, N.A.* *See Wells Fargo Bank, N.A. v. Superior Court of San Francisco County*, 159 Cal. App. 4th 381 (Cal. App. 1st Dist. 2008) (directing the trial court to sustain the bank's demurrer based upon SLUSA preemption). At the dismissal argument in *Siepel* in November, 2006, the Consortium cited to the very recent, unpublished decision by the trial court originally overruling Wells Fargo's demurrer in *Richtenburg*. *See* Exhibit 3 (excerpt from transcript of argument). The Consortium could only have learned of that ruling via communications with Plaintiff's counsel here.

Between 2006 and 2008, nine courts (in addition to the Eighth Circuit and the California Court of Appeal) in seven states considered whether SLUSA preempted the state law class claims pursued here. These various courts all held that SLUSA preempts these claims.[4] *See* note 1, *infra*.

**1. Even After Judge Magnuson's Finding Of Forum Shopping, This Conduct Continued.**

In February 2006, Mr. Cobrinik (a member of the Consortium) filed an eighth case against Bank of America in federal court in New York – *Luleff v. Bank of America, N.A.* *Luleff* was filed two months after a ruling adverse to plaintiffs (in *Reinke* and while the Bank's motions to dismiss were pending in both *Kutten I* and *Siepel*). The *Luleff* Complaint asserted similar state law class claims, using much of the same language from the prior complaints, on behalf of the same putative class. *See* Exhibit 4 (*Luleff* Complaint).[5]

In May 2008, the Bank reached a tentative agreement to resolve Ms. Luleff's individual claims just days after the Eighth Circuit's unanimous decision affirming the *Siepel* dismissal. With

---

4 As required by Local Rule 7-5, the Declaration of K. Issac deVyver was filed contemporaneously with this Motion. The Declaration verifies the factual information set forth herein and authenticates the evidence attached hereto.

5 Cobrinik appeared as the plaintiff's counsel in *Luleff*; Greenfield did not. Because Greenfield and Cobrinik filed the same claims against LaSalle Bank in 2002, the Bank believed that Cobrinik filed *Luleff* at the behest of Greenfield and the Consortium. In the beginning Cobrinik and Greenfield denied their concerted effort. (Accordingly, *Luleff* – the eighth case - was not included as part of the "ample" record supporting the *Siepel* finding of forum shopping). Ultimately, however, and under oath, Greenfield admitted he was the "de facto" lead counsel in all of the cases, including *Luleff*, even though he had never entered his appearance. *See* Exhibit 5 (*Williams*, March 24, 2008 Transcript, pp. 261, 274); *see also* Exhibit 6 (Greenfield writes he was "actively involved behind the scenes" in *Luleff*).

this settlement and ruling, the Bank believed that this litigation odyssey was coming to an end. Yet, there proved to be no reason for optimism. Less than ten days after the *Siepel* affirmance and within five days of notifying the judge in *Luleff* of the proposed settlement, two new actions – the ninth and tenth – were filed on the very same day, in New York (*Martinez*) and California (this case) federal courts.

In *Martinez*, like the eight cases before it, the plaintiff asserted similar class claims, alleging that investment of trust assets in the Bank's affiliated mutual funds gave rise to a breach of fiduciary duty. *See* Exhibit 7 (*Martinez* Complaint). Although Greenfield, as in *Luleff*, again did not appear of record (*see* note 4 *supra*), the *Martinez* plaintiff was represented by David Brower, who, along with Greenfield, was counsel in another case against yet another bank pressing similar class claims. *See Segal*, 2008 WL 819290 (dismissal based on SLUSA preemption). The Bank once again moved to dismiss, and the Consortium filed an amended complaint as it had done over a dozen times before. But with this filing, Greenfield confirmed what the Bank already had suspected – he signed on to the amended complaint as counsel. *See* Exhibit 8 (*Martinez* Amended Complaint).

### 2. Judge Magnuson Exercises His Inherent Powers To Admonish The Consortium.

With Greenfield's admission that he indeed had prompted the filing of *Luleff*, and in the face of the ninth and tenth filings (*Martinez* and this case), the Bank moved for an award of fees in the cases pending before Judge Magnuson in Missouri, asking him to exercise his inherent powers to stop the serial, vexatious filings. Just a few months ago, Judge Magnuson granted the Bank's motion for fees. *See* Exhibit 9 (Order Awarding Fees). In particular, he found that the filing of *Martinez* and *this case* continued the improper series of vexatious filings:

> Plaintiffs and their attorneys have prosecuted this case with nothing short of abandon. They have refused to admit defeat despite a plethora of decisions against their position. Their conduct in dismissing and refiling cases border on the dilatory and, as discussed above, at the very least constitutes forum shopping. The Court cannot countenance such conduct . . . .
>
> In appears that Plaintiffs' attorney have not been deterred by the rulings of this Court or other courts condemning their forum shopping and other vexatious litigation tactics. ***They do not deny that they have filed or assisted in filing two new actions [Martinez and Stoody] based on the same conduct claimed wrongful in the numerous actions previously dismissed*** . . . . The instant case presents an example of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

> when awarding fees and costs is most appropriate. Plaintiffs and their counsel have pursued multiple lawsuits, propounded voluminous discovery, and engaged in blatant forum shopping. Neither the admonitions of this Court or other courts have slowed Plaintiffs' counsel's dilatory ways. An award of fees and costs is not only appropriate, it may be the only way to convince Plaintiffs and counsel to end their pattern of forum shopping and vexatious litigation.

*Kutten v. Bank of America*, Nos. 04-0244, 06-0937, slip op. at **6-9 (emphasis added).

Plaintiff's counsel here filed declarations in support of the Consortium's motion for reconsideration of Judge Magnuson's decision. Those declarations did not dispute Judge Magnuson's finding that this case continued the forum shopping. Rather, they only vaguely stated that "None of Plaintiffs' counsel in the above captioned *Kutten* cases have had any contact with the Plaintiff in *Stoddy-Broser* [sic] or played any role in our decision to commence *Stoddy-Broser* [sic]." Exhibit 10 at ¶2 (Murray Declaration); Exhibit 11 at ¶2 (McCarthy Declaration). Judge Magnuson denied the motion for reconsideration. *See* Exhibit 12 (Order).[6] In the face of this decision and the Bank's pending motions to dismiss and for fees, the *Martinez* plaintiffs (the ninth case) voluntarily dismissed their case with prejudice. *Stoody* is the sole remaining case against the Bank.

### 3. Discovery Confirms That This Case Continues The Pattern Of Forum Shopping.

#### a. *The circumstantial evidence is compelling.*

From the very beginning, the circumstantial evidence has suggested that this case was linked to the Consortium's forum shopping. First, this case was filed the very same day as *Martinez* (the ninth case the Consortium filed), ten days after the Court of Appeals decision in *Siepel*, and five days after the Bank confidentially advised the Court in *Luleff* that a settlement had been reached in the last pending case. Given that the Consortium had precipitated previous filings without appearing of record (e.g., *Luleff, Martinez*), the timing of the filing of this case (just as *Siepel* and *Luleff*

---

6 The Bank also moved for injunctive relief to enjoin further filings. The Consortium did not file any opposition to that motion. Prior to a ruling, the Consortium and the Bank entered into a settlement agreement at the end of 2008 whereby the Consortium and their clients dismissed the remaining individual claims, paid the Bank $3.4 million in fees and entered into a consent decree agreeing not to sue the Bank again without seeking leave of Court.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

concluded), and that Plaintiff's counsel had communicated with the Consortium about *Richtenburg* and the other cases,[7] the Bank suspected that this action simply was the next one in line.

Second, the Bank's suspicion hardened further on review of the *Stoody* Complaint. It asserts precisely the same purported "scheme" as alleged in the forum shopping cases; that is, an alleged scheme to funnel trust assets into affiliated mutual fund investments allegedly to reap excessive fees. *See Kutten*, 530 F.3d at 669 ("Just as in Siepel, the Appellants' class action claims center on Bank of America's alleged plan to funnel trust assets into a mutual fund substantially owned by the Bank."). In particular, the allegations, language and causes of action in Plaintiff's Complaint and the *Martinez* Complaint, the most recent iteration of these claims brought by the Consortium, are strikingly similar, and in many instances, even identical. *See* Defendants' Memorandum and Points of Authorities in Support of Discovery (Docket No. 51), pp. 5-6.

Third, the Bank's suspicions were confirmed when the Consortium was asked to produce documents reflecting communications with Plaintiff's counsel about this case. They did not deny such communications. To the contrary, they "stymied" discovery (to use Judge Magnuson's words) and refused to produce any documents. *See* Exhibit 13 (Objections of Greenfield & Goodman).

Finally, Greenfield and the Consortium had previously tried to hide their role in compelling other filings, including *Luleff* and *Martinez,* and then later admitted to their role. As a result, the fact that they were not counsel of record here did not mean that they were not "actively involved behind the scenes," (*see* Exhibit 6, e-mail in which Greenfield so characterizes his role in *Luleff*) and discovery has confirmed that indeed they are.

**b.** ***The direct evidence is overwhelming.***

As this Court is aware, the Bank relied on the above evidence to request discovery on possible continued forum shopping. The Court will also recall that in opposing the Bank's motion,

---

7 In early September, 2008, Plaintiff's counsel cited a decision entered on the *Luleff* case in their unsuccessful attempt to oppose Wells Fargo's demurrer in *Richtenburg*. In that ruling, the *Luleff* Court agreed with the Bank that allegations triggered SLUSA but granted Plaintiffs' motion for leave to amend. The ruling in *Luleff* was rendered at the close of oral argument and was not published. Without question, the Consortium shared this decision with Plaintiff's counsel. This further confirmed for the Bank that the Consortium and Plaintiff's counsel were working together.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff's counsel submitted declarations admitting to "occasional" contact with Greenfield, but denying any involvement in the forum shopping. Plaintiff's counsel stated that they learned of Greenfield through researching other cases raising similar SLUSA issues and had "limited" communications with him about those issues. *See* Plaintiff's Opposition (Docket No. 56), pp. 6, 9. Further, Plaintiff's counsel represented, under oath, that they did not know that the complaint in *Martinez* was being filed and never "developed litigation strategy with Mr. Greenfield in any class action trust case, nor any other attorneys [in the Consortium]." Declaration of Derek Howard (Docket No. 55), ¶ 38; Declaration of Niall McCarthy (Docket No. 54), ¶ 38. Their own e-mail records, even so heavily redacted, refute these representations.[8]

Plaintiff's counsel produced nearly 90 e-mail communications with the Consortium over a two-year period, and those e-mails reflect numerous meetings and calls. This is not "limited" communication by any fair depiction of the term.[9] On the contrary, the documents reflect regular communications, both in-person, by phone and by e-mail, about this case, as well as the other actions filed against other banks.[10] And, contrary to Plaintiff's counsel's declarations, those

---

8 Plaintiff and her counsel have opposed the Bank's effort to obtain discovery to substantiate their involvement with the Consortium at every turn. They threatened sanctions when subpoenas were served, they refused to provide any dates for or to appear for any depositions, and they produced documents with heavy redactions and without attachments, and a privilege log with scant detail. *See* Exhibits 16 (January 27, 2009 letter), 17 (February 18, 2009 letter), 18 (Plaintiff's Counsel's Objections and Responses to the Bank's Subpoena and Privilege Logs). Given the conduct detailed here, the Court properly could ask to see the extensive e-mails communications *in camera* with the Consortium in unredacted form.

9 Defendants were unable to obtain copies of e-mail communications from Greenfield or Cobrinik. Greenfield's computer mysteriously crashed, deleting all of his e-mail records. Cobrinik denied having any e-mail communications with Plaintiff's counsel (except to set up a cross-country breakfast meeting), even though the documents produced by Plaintiff's counsel here show that he had numerous e-mail communications with Plaintiff's counsel, including sharing draft pleadings and case updates. For his part, Hamburg produced over 30 e-mail communications with Plaintiff's counsel here. *See* Exhibit 19 (Consortium Subpoena Responses).

10 *See, e.g.,* Exhibit 20 ("Richard [Greenfield], we should talk soon about status of these cases, thanks."); Exhibit 21 ("Derek, Enjoyed our talk. Look forward to more."); Exhibit 22 ("Steve [Hamburg], Gil [Murray] and I were hoping to schedule a call with you to discuss status. Derek [Howard]"); ("Steve [Hamburg], we will shoot for tomorrow at 1 PM our time."); Exhibit 23 ("[Richard Greenfield], what is new on your end?"); Exhibit 24 ("I can take your call if you have time."); Exhibit 25 ("Forward this to counsel who you think would want to be involved with this call. This will be about the B of A cases, the Wachovia case, the LaSalle case, the JP Morgan case, etc."); Exhibit 26 ("We should get together for lunch to discuss these trust cases."); Exhibit 27 ("I will be at your office closer to 2"); Exhibit 28 ("Anything new on your case . . . How about lunch . . ."); Exhibit 29 ("I need to speak with you re developments in NY and your case.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

communications have been related to litigation strategy. Plaintiff's counsel and the Consortium exchanged drafts of complaints and briefs filed in the prior cases, all aimed at trying to avoid SLUSA preemption. *See* Exhibit 6 (e-mail providing the "purged" complaint filed in *Luleff*); Exhibit 14 (e-mail providing "complaint stripped of allegations of misrepresentations and omissions" in *Kutten*); Exhibit 15 (various e-mails). Beyond the shared pleadings, the Consortium provided confidential discovery information in breach of various protective orders, deposition summaries, transcripts, and they even sent Plaintiff's counsel a 65-page draft motion for class certification from the *Kutten* case. See Exhibit 30 (various e-mails).

Counsel not only exchanged documents, they provided input on draft pleadings and helped one another to prepare for oral arguments on the very issues raised in this case. *See* Exhibit 31 (e-mail setting up call to have Plaintiff's counsel assist Greenfield to prepare for oral argument in *Siepel*); Exhibit 32("This came in yesterday and I am considering a sur-reply. I would be interested in your thoughts."); Exhibit 33 ("Please review."); Exhibit 34 ("Please review the attached and let me know if you agree with the analogy I have provided on the second page[.]"); Exhibit 35 ("Needless to say, Mary Hackett wrote a letter to the Court explaining why Segal requires dismissal of the Luleff case. I've written a draft response, which I would like to get your input on. Please give me any comments you might have on the attached.") One e-mail even shows that Plaintiff's counsel here helped the Consortium devise their claims and allegations against the Bank in the prior cases.[11]

In sum, the e-mails confirm long-standing, detailed, concerted activity including that members of the Consortium and Plaintiff's counsel here:

- First discussed suing the Bank in 2006. *See* Exhibit 36 (September 18, 2006 e-mail).
- Crossed the United States repeatedly to meet in person, including a meeting in 2007 to "brainstorm" about suing the Bank. *See* Exhibit 37 (numerous e-mails reflecting meetings).
- Frequently exchanged filings, drafts, and held strategic discussions on how to plead around SLUSA. *See* Exhibits 38 (numerous e-mails showing exchanges and discussions).

---

11 An e-mail from Plaintiff's counsel, Derek Howard, to Greenfield states that Howard "met with Niall McCarthy" and they "brainstormed BofA" and devised "some new claims that [Greenfield had] not thought of which will enhance" Greenfield's case against Defendants. *See* Exhibit 37 (February 19, 2007 e-mail).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- Frequently convened conference calls to discuss updates and the status of the cases, *see* Exhibit 25 ("Forward this to counsel who you think would want to be involved in this call. This will be about the BofA cases, the Wachovia case, the LaSalle case, the JP Morgan case, etc."), and then they confirmed the joint, concerted activity by claiming that many communications are privileged. *See* Exhibit 17 (February 18, 2009 letter).

These direct communications take on added significance for this motion when one looks at the months right before this case was filed. E-mail communications in this period confirm that this case was filed with the Consortium's extensive input and urging. In early 2008, for example, Cobrinik and Greenfield each sent to Plaintiff's counsel drafts of pleadings filed in the prior cases. To use their words, these complaints included "stripped down" and "purged" versions of complaints previously filed against the Bank,[12] specifically intended to try to overcome the prior rulings on SLUSA preemption. *See* Exhibit 6 (e-mail providing the "purged" complaint filed in *Luleff*); Exhibit 14 (e-mail providing "complaint stripped of allegations of misrepresentations and omissions" in *Kutten*); Exhibit 15 (numerous e-mails showing exchanges).

Several weeks later, Cobrinik (who denied having any e-mail communications with Plaintiff's counsel – Exhibit 39) sent Plaintiff's counsel two e-mails prompting them to "come on in against BOA [Bank of America] any time" because "the water's warm" so they should "step right in." In response to the Consortium's prompting, Plaintiff's counsel responded, "Is the water warm or hot? . . . Let's talk." *See* Exhibits 40 and 41 (April 14 and 22, 2008 e-mails).

Greenfield then followed with an e-mail to Plaintiff's counsel, asking if there was "[a]nything new with your complaint" (to which Plaintiff's counsel responded that they were "preparing the finishing touches") and attempting to set up a meeting a few days later. *See* Exhibit 42 (April 24, 2008 e-mail). An e-mail from Greenfield on April 28, 2008, confirmed the meeting

12 Neither Defendants nor this Court can compare whether the draft complaints provided by the Consortium track what Plaintiff's counsel filed here because Plaintiff and her counsel have refused to produce those e-mail attachments and draft complaints. *See* Exhibit 43 (letters reflecting requests for attachments). However, it appears that Cobrinik and Greenfield both forwarded the Second Amended Complaint filed in *Luleff*. *See* Exhibits 6, 14 (e-mails forwarding *Luleff* Second Amended Complaint). The comparison of the *Stoody* Complaint and the *Luleff* Second Amended Complaint confirms ***extensive*** similarities. *See* Exhibit 44 (chart comparing the Complaints). Indeed, many of the paragraphs in the *Stoody* Complaint are identical or nearly identical to the language in the *Luleff* Second Amended Complaint. *Id.*



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

took place. *See* Exhibit 27 (April 28, 2008 e-mail) ("I will be at your office closer to 2") So just one month before this case was filed, Greenfield, the Consortium's self proclaimed "lead counsel," flew there to meet with Plaintiff's counsel for the very purpose of discussing the filing of this action.

The e-mail trail then shows that after that meeting, the Consortium provided Plaintiff's counsel with an extensive amount of information, including confidential transcripts, deposition summaries, a draft brief in support of class certification, and other information from the forum shopping cases. *See* Exhibit 30 (various e-mails).

And in complete contradiction to the recent declaration submitted by Plaintiff's counsel, the direct communications during this same time frame, just a month before this case was filed, between the Consortium (*i.e.*, Cobrinik) and Plaintiff's counsel here confirm a desire to obtain a "global" settlement from the Bank in "our" cases and the urging by the Consortium to Plaintiff's counsel to "Come on in against BOA any time":

**Derek Howard**

---

**From:** Derek Howard
**Sent:** Tuesday, April 22, 2008 12:02 PM
**To:** cobrinik@juno.com
**Subject:** Re: Segal decision; Bank of America litigation

Dan, thanks for forwarding. I will ring you tomorrow

On 4/14/08 2:15 PM, "cobrinik@juno.com" <cobrinik@juno.com> wrote:

> Derek
>
> As you might have seen, Richard got killed in a Florida decision on attorneys fees: he owes > $1.5 Million for attorneys fees in a case similar to ours, based on his repeated voluntary dismissals and refiling of new cases.
>
> My understanding is that nothing is going on with the mediation for now: BOA evidently wants to wait and see what happens with the LaSalle and Luleff decisions. That's fine with me: If we lose those cases we can appeal -- if we win we are in a much stronger position in terms of negotiating a global settlement. I think we survive the motion to dismiss.
>
> Come on in against BOA any time. Have attached the current version of Luleff's complaint against BOA for your edification.
>
> Dan
>
> ---
>
> Get educated. Click here for Adult Education programs.
> <http://thirdpartyoffers.juno.com/TGL2122/fc/Ioyw6i3nNbXCgpyG7P544ebdpRrFy791yIx7SQU4h68RI3M40nIifx/>

Exhibit 41 (April 22, 2008 e-mail).[13]

Finally, just days before this case was filed, Greenfield e-mailed to set up a phone conference with Plaintiff's counsel to discuss this case and the "New York case". *See* Exhibit 29 (May 28, 2008 e-mail). Plaintiff's counsel responded indicating, "Richard, I expect to be on file today". *Id.*[14] Plaintiff's Complaint was filed the next day, May 29, 2008, the same day *Martinez* was filed in New York.

And again this record, reflecting extensive joint efforts, was obtained from heavily redacted e-mails. In declaration upon declaration, Plaintiff's counsel has denied joint efforts with the Consortium, including the latest declaration of Derek Howard claiming that the joint efforts are nothing more than a contrived maneuver of the Bank's counsel. *See* Declaration of Derek Howard (Docket No. 55), ¶ 38; Declaration of Niall McCarthy (Docket No. 54), ¶ 38. Yet to justify the redactions and withholding of even more communications with the Consortium, Plaintiff's counsel asserted a "common interest" privilege over their communications with Greenfield and the Consortium. *See* Exhibit 17 (February 18, 2009 letter). The "common interest" privilege only applies to "cooperating plaintiffs." *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F. Supp. 329 (C.D. Cal. 1992). By invoking this privilege, Plaintiffs have conceded that the communications were part of an "on-going and joint effort to set up a common [plaintiff] strategy" and that they "share a common interest in litigation". *See U.S. v. DeNardi Corp.*, 167 F.R.D. 680, 685-86 (S.D. Cal. 1996). "Only those communications made in the course of an ongoing enterprise and intended

---

13 Plaintiff's counsel Derek Howard submitted a declaration just a few weeks ago claiming that the Bank's counsel, during a conversation about mediation in the fall of 2008, "was attempting to maneuver [Plaintiff's counsel] into a formal working relationship with . . . [the Consortium] to legitimize Reed Smith's subsequent inaccurate assertions that . . . [Plaintiff's counsel] were part of a so-called 'consortium.'" *See* Declaration of Derek Howard ¶10 submitted in support of Plaintiffs' Motion for Protective Order (Docket No.76). In the face of the e-mail communications, Mr. Howard's accusation as to the Bank's counsel's motives is clearly unfounded, but more importantly, the statements in his declaration are inconsistent with his own e-mail communications.

14 This e-mail also undermines Plaintiff's counsel's representations to the Court that they did not know that *Martinez,* the "New York case," was being filed, never spoke to counsel in *Martinez* (as Greenfield was counsel in *Martinez*), and that the filing of this case and *Martinez* on the same day was just a "coincidence." *See* Declaration of Derek Howard (Docket No. 55), ¶ 38; Declaration of Niall McCarthy (Docket No. 54), ¶ 38. (where Plaintiff's counsel denies knowing about *Martinez* before it was filed and denies discussing strategy with Greenfield); Exhibit 45 (July 14, 2008 e-mail showing that Greenfield forwarded *Martinez* filings to Plaintiff's counsel).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

to further the enterprise are protected." *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2nd Cir. 1989). Invoking the "common interest" privilege only further confirms the joint efforts with the Consortium.

**B. The Court Should Dismiss The Complaint Because Plaintiff And Her Counsel Have Engaged In Forum Shopping.**

"Judge-shopping is a practice that has been universally condemned." *Lane v. City of Emeryville*, No. 93-16646, 1995 U.S. App. LEXIS 11629, at *4 (9th Cir. May 16, 1995). It occurs when a party voluntarily dismisses a case, only to refile and assert the same claims in another court or in front of another judge. *See Steward v. Dow Corning Corp.*, No. 92-1105, 1992 U.S. Dist. LEXIS 4048, at *3 (D. Kan. Mar. 13, 1992); *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp.2d 69, 73 (D.P.R. 2004) (plaintiffs engaged in "judge shopping" by voluntarily dismissing and refiling the same case); *McDermott v. Toyota Motor Sales Co., Ltd.*, 487 F. Supp. 484, 486 (E.D. Tenn. 1980) (plaintiff's act of voluntarily dismissing and refiling the same case constituted "forum shopping").

Moreover, "case law supports the proposition that a district court has the inherent power sua sponte to dismiss an action for judge-shopping." *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998); *see also Keilholtz v. Superior Fireplace Co.*, No. 08-00836, 2008 WL 5411497 (N.D. Cal. Dec. 29, 2008). "Judge-shopping clearly constitutes conduct which abuses the judicial process. The district court's inherent power to impose dismissal or other appropriate sanctions therefore must include the authority to dismiss a case for judge-shopping." *See Hernandez*, 138 F.3d at 399 (citations and quotation omitted).

The evidence here shows that Plaintiff and her counsel have continued the pattern of forum shopping that Judge Magnuson already condemned. The Consortium previously brought, and had dismissed, nine actions against Defendants making similar allegations on behalf of the same putative class as Plaintiff's Complaint here. The record confirms that Plaintiff's counsel has been in regular (as opposed to "limited") contact with the Consortium, including in-person, by phone and e-mail, about all aspects of the various cases. They have worked and strategized jointly, sharing and commenting upon confidential discovery materials and drafts of various complaints and other

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

pleadings, including "stripped down" and "purged" complaints – in an attempt to artfully circumvent SLUSA's preemptive bar. As Judge Magnuson noted, to declare that they had only "limited" joint involvement with the Consortium and then to stymie discovery via extensive redactions, refusing to produce documents or to appear for a deposition, all based upon of a "common interest" privilege is an irony that should not go unnoticed. *See* Exhibit 12 (Order). If more were needed, the e-mails now confirm the coordinated efforts leading to the joint filing of *Martinez* and this case on the very same day. Judge Magnuson correctly concluded that this case is just one more in the string of vexatious filings. The only difference is that *Martinez* was dismissed voluntarily, while this case persists.

Once forum shopping is found, the Court must consider the following five factors to determine whether dismissal is appropriate: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hernandez*, 138 F.3d at 399; *Keilholtz*, 2008 WL 5411497, at *1. When four of these factors support dismissal, or three of them strongly support it, then dismissal is the appropriate remedy. *See Hernandez*, 138 F.3d at 399.

All five factors support dismissal here. As Judge Magnuson already has held, the first two factors – expedient resolution and sound docket management – are flaunted by lawyers who, having lost or abandoned a case in one forum, simply move to a new forum and start over. Nor, as Judge Magnuson concluded, is there any reason for the judiciary to sit idly by and let this vexatious conduct continue.

The third factor suggests the same result. The Bank has spent hundreds of thousands of dollars litigating these serial filings, in each case obtaining a dismissal. It should not be required to do so a tenth time. The public policy favoring disposition of cases on the merits, the fourth factor, does not warrant a different result but instead countenances in favor of dismissal as well. Defendants have litigated the very issue raised by Plaintiff's Complaint and obtained dismissals on SLUSA grounds in both *Siepel* and *Kutten* (and the same legal result obtained for the same reasons in *Spencer, Segal, Rabin, Hughes,* and *Richtenburg*). There is no reason to revisit the merits because

the outcome on the merits is well-settled – when asserted in a class-wide format, SLUSA forecloses Plaintiff's state law claims.

Finally, if the Court finds forum shopping, no remedy other than dismissal is appropriate given that the factors each point to this outcome. Indeed, because Plaintiff has refused to heed Judge Magnuson's observations and voluntarily dismiss, dismissal by this Court is the only effective remedy to protect the integrity of its process. *See Zografos v. Qwest Comms. Corp.*, 225 F. Supp.2d 1217, 1223-24 (D. Or. 2002) (finding "clear evidence of judge-shopping," applying *Hernandez*, and dismissing amended complaint to "[p]rotect[] the integrity of the judicial process").

## III. PLAINTIFF'S STATE LAW CLASS CLAIMS ARE PREEMPTED BY SLUSA.

The pattern of forum shopping evoked by the filing of this case provides reason enough for dismissal. Yet, even if the Court looks beyond that rationale, dismissal is warranted when SLUSA's preemptive principles are considered and applied. As is relevant here, a complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if it alleges state law class action claims that are subject to federal preemption under SLUSA, 15 U.S.C. §§ 77p(b), 78bb(f)(1). *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 999-1000 (C.D. Cal. 2002) (dismissing state law class action claims based on SLUSA); *In re Edward Jones Holders Litigation*, 453 F.Supp.2d 1210, 1217 (C.D. Cal. 2006) (same). Here, as many courts have held before, Plaintiff's allegations bring her claims within SLUSA's purview and accordingly require that her Complaint be dismissed.

### A. SLUSA Preempts "Covered Class Actions" Based On State Law That Are Predicated Upon Misrepresentations, Omissions, Or The Use Of A Deceptive Or Manipulative Scheme "In Connection With" The Purchase Or Sale Of A "Covered Security."

Plaintiff brings her claims on behalf of herself and a putative nationwide class of "thousands" of trust beneficiaries whose trust accounts are administered by the Bank as trustee and invested in shares of Nations Funds. *See* Complaint, ¶¶ 40-51. She alleges that, as trustee, the Bank owed her a fiduciary duty of loyalty and care in the administration of her trust assets, including the Bank's decision to invest trust assets in shares of mutual funds. *Id.* at ¶¶ 2, 23. According to the Complaint, however, the Bank's administration of her trust has been unlawfully compromised by an

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"irreconcilable" conflict of interest attributable to the fees that the Bank receives as a result of investing trust assets in shares of its affiliated mutual funds. *Id.* at ¶¶ 2-4, 23-24. Specifically, Plaintiff has systematically embarked on an imprudent scheme to enrich itself at the expense of trust beneficiaries by (1) investing trust assets in mutual funds that pay excessive fees for portfolio management and other services and (2) charging and collecting fees for both trustee services and mutual fund management services. *Id.* at ¶¶ 2-4, 20, 24-27.[15] In furtherance of this scheme, Plaintiff claims that the Bank:

- Adopted policies and procedures that caused the Bank not to consider alternative, non-affiliated investments with lower fees and/or better performance, *id.* at ¶¶ 2-4, 24, 30-32, 35, 38, 54, 59-60, 64, 67, 71;

- Used trust accounts as a "primary distribution channel" for the affiliated funds and "forced" trust accounts to purchase those fund shares, *id.* at ¶¶ 24-25, 27, 30-37, 64;

- Placed its own interests ahead of trust beneficiaries when it invested trust assets in affiliated mutual funds without the requisite degree of loyalty to the interests of trust beneficiaries and without the requisite degree of care for the performance of affiliated mutual funds, *id.* at ¶¶ 23-24, 26-39, 52-72;

- Deliberately informed trust beneficiaries about affiliated mutual fund investments only after those investments were made, *id.* at ¶¶ 25, 53;

- Failed to document, and make available to trust beneficiaries, information about affiliated mutual fund transactions, including information about the way in which the Bank handled its alleged conflict of interest, *id.* at ¶¶ 35-36; and

- "Performed" other "acts" and/or made other "statements" in furtherance of its scheme with full "knowledge" and "awareness" of the scheme's "primary" goals, *id.* at ¶¶ 18-19.

---

[15] California law (and the law of nearly every other state) authorizes trustees to invest trust assets in affiliated mutual funds and ensures that trust beneficiaries receive notice and information about the investments. *See, e.g.*, Cal. Financial Code § 1561.1; *Hughes v. LaSalle Bank, N.A.*, 419 F. Supp.2d 605, 619 (S.D.N.Y. 2006) (trustee did not engage in self-dealing where its investments in affiliated mutual were authorized by law), *vacated on other grounds*, 2007 WL 4103680 (2nd Cir. Nov. 19, 2007); *Estate of Vail v. First of Am. Trust Co.*, 722 N.E.2d 248, 251-252 (Ill. App. Ct. 1999) (executor did not act improperly by investing in an affiliated fund, noting that the law allows such investments); *see also* J. Langbein, *Questioning the Trust Law Duty of Loyalty: Sole Interest or Best Interest?*, 114 Yale L.J. 929, 972-73 (2005) (Congress and the states have recognized that mutual funds have "significant advantages" and have enacted statutes authorizing bank trustees to invest trust assets in affiliated mutual funds).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Based on the Bank's alleged "policies, acts, practices, and omissions," Plaintiff asserts five state law claims that the Bank: breached its fiduciary duties of care and loyalty (Counts I and II); aided and abetted the breach of fiduciary duties (Count III); was unjustly enriched (Count IV); and violated Section 17200 of the California Business and Professions Code (Count V). *Id.* at ¶¶ 52-72. Plaintiff seeks monetary damages for herself and her putative class. *Id.*; Prayer For Relief.

SLUSA is the result of more than a decade of work by Congress to curb the abusive use of the class action device in securities cases. Congress first sought to limit the abuse of the class action device in federal cases by enacting the Private Securities Litigation Reform Act of 1995 (the "1995 Reform Act"), codified at 15 U.S.C. §§ 77z-1. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006). The 1995 Reform Act imposes, among other things, heightened pleading requirements and discovery stays in actions brought pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. *Id.* at 81-82.

The 1995 Reform Act, however, produced certain "unintended consequence[s]" for securities class actions nationwide. *Id.* at 82. "[P]laintiffs and their representatives began bringing class actions under state law, often in state court." *Id.* To forestall this end run around federal securities laws, Congress enacted SLUSA. *Id.* SLUSA embodies a rule of "complete preemption" that provides federal courts with subject matter jurisdiction over, and compels the dismissal of, class actions asserting state law theories of liability that arise "in connection with" the purchase or sale of covered securities. *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1128 (9th Cir. 2002); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107-08 (2nd Cir. 2001); *In re Edward Jones Holders Litigation*, 453 F.Supp.2d at 1214. The statute's preemptive provision states in pertinent part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b); *see also* 15 U.S.C. § 78bb(f)(1) (same).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

SLUSA preemption thus applies whenever the statute's four-part test is satisfied. That is, with very limited exceptions that do not apply here, SLUSA preemption applies any time a lawsuit: (1) is a "covered class action"; (2) asserts a claim based on state law; (3) involves a "covered security"; and (4) alleges that the defendant misrepresented or omitted a material fact or employed any deceptive or manipulative device or contrivance "in connection with the purchase or sale of such security." *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1092 (11th Cir. 2002); *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d (833-843) (9th Cir. 2007)(same).

**1. Plaintiff's Allegations Involve A "Covered Class Action" Based On State Law And Involve The Purchase And Sale Of A "Covered Security."**

Initially, SLUSA's first three requirements are satisfied here. Plaintiff's Complaint asserts a class action based on state law. *See* Complaint, ¶¶ 40-51, 52-72, Prayer For Relief. The Complaint also pleads a "covered class action"—*i.e.*, an action that seeks damages "on behalf of more than 50 persons or prospective class members." 15 U.S.C. § 78bb(f)(5)(B) (definition of a "covered class action"); Complaint, ¶ 43 (putative class members number in the "thousands"). And lastly, the Complaint involves a "covered security"—*i.e.*, shares of federally registered and nationally-traded mutual funds.[16] *See* 15 U.S.C. §§ 78bb(f)(5)(E) and 77r(b)(2) (defining "covered securities" to include federally registered mutual funds); Complaint, ¶¶ 1, 3-6, 11, 24, 26, 30-39; *see, e.g., Kenneth Rothschild Trust*, 199 F.Supp.2d at 999-1000 (C.D. Cal. 2002) (SLUSA preempts state law claims concerning investments in shares of money market mutual funds); *In re Edward Jones Holders Litigation*, 453 F.Supp.2d at 1214-17 (same where complaint accused brokers of steering investors to purchase and hold shares of certain mutual funds).

///

///

///

---

16 The mutual funds are registered with the Securities and Exchange Commission now under the name "Columbia Funds Series Trust" as an investment company under the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.*



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**2. Plaintiff's Allegations Involve Misstatements And Omissions Of Material Facts And A Deceptive And Manipulative "Scheme" By The Bank "In Connection With" The Purchase Of Affiliated Mutual Fund Shares.**

SLUSA's fourth requirement is satisfied as well. Plaintiff's Complaint alleges that the Bank made "*statements*" and "*omissions*" concerning material facts in furtherance of a "*scheme*" to "*force*" trust accounts to purchase shares of Nations Funds. *See* Complaint, ¶¶ 18-19, 59, 64 (emphasis added). The Complaint further alleges that the Bank had an "irreconcilable" conflict of interest attributable to increased fees from trust assets invested in affiliated mutual funds (thereby alleging implicitly that this supposed conflict was never adequately disclosed to trust beneficiaries), and that the Bank failed to "*document*" and make "*available*" to trust beneficiaries appropriate information about affiliated mutual fund transactions, including information about the way in which the Bank handled its alleged conflict of interest. *Id.* at ¶¶ 24, 30-34, 35-36 (emphasis added).

The Complaint also alleges facts about the timing and substance of disclosures made by the Bank to trust beneficiaries in connection with the investment of their trust assets in affiliated mutual funds—clearly contending that the Bank's disclosures were designed to keep trust beneficiaries in the dark about the investments as long as possible and prevent trust beneficiaries from exercising their rights under trust agreements and state law. *Id.* at ¶¶ 25, 53 (the Bank sent notice of Nations Funds investments after investments were made and only through "periodic trust account statements"). And the Complaint repeatedly alleges that the Bank's conduct has been "willful" and "unlawful" – pleading terms that are mere euphemisms for express allegations of misstatements, omissions, and deceptive or manipulative conduct.

Fairly read, therefore, the gravamen of the Complaint describes a "scheme" "in connection with" the investment of trust assets in shares of the affiliated funds that involves omissions and deceptive and manipulative conduct on the part of the Bank.

In six separate cases, federal and state courts have reviewed allegations analogous to those made here and held that SLUSA preempts state law class action claims for breach of fiduciary duties, unjust enrichment, and violation of state statutes brought in this *precise* context – *i.e.*, by trust beneficiaries alleging a "scheme" to invest trust assets in shares of affiliated or proprietary mutual

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

funds. *See Spencer*, 2006 WL 3408043, at **2-9; *Siepel*, 239 F.R.D. at 567-72, *aff'd*, 526 F.3d at 1126-28; *Rabin*, 2007 WL 2295795, at **5-8; *Kutten*, 2007 WL 2485001, at **3-8, *aff'd*, 530 F.3d at 669; *Segal*, 2008 WL 819290, at **3-7; and *Wells Fargo Bank*, 159 Cal. App. 4th at 385-94. In each of these cases, trust beneficiaries alleged a scheme by a bank trustee to invest trust assets in affiliated mutual funds that implicated misstatements, omissions, and deceptive or manipulative conduct, and the beneficiaries asserted state law class action claims for breach of fiduciary duties of loyalty and care in investing, unjust enrichment, and other non-fraud violations of state law. In each case, the court ruled that plaintiff's claims were subject to dismissal based on SLUSA.

In *Siepel* and *Kutten,* for instance, the trust beneficiaries alleged the *exact* same "scheme" and asserted the *exact* same state law class action claims against the Bank that Plaintiff asserts here. The plaintiffs in each of these cases alleged that, as trustee, the Bank had an irreconcilable conflict of interest concerning trust investments in Nations Funds and that the Bank devised a scheme to invest trust assets in shares of Nations Funds, resulting in "pervasive self-dealing." *Kutten*, 2007 WL 2485001, at *1 (quoting from the plaintiffs' amended complaint), *aff'd*, 530 F.3d at 669-70; *Siepel*, 239 F.R.D. at 560-61, 567-72, *aff'd*, 526 F.3d at 1126-28.

In both *Siepel* and *Kutten*, Judge Magnuson found that because the "crux" of the amended complaint alleged misstatements and omissions and "deceptive" and "manipulative" conduct by the Bank as part of a scheme to invest in affiliated mutual funds, it fell within SLUSA's ambit:

> [T]he class claims are framed as breach of fiduciary duty, unjust enrichment, breach of contract, and violations of state statutes. Nonetheless, the ***crux*** of the Amended Complaint is that Defendants engaged in self-dealing transactions and misrepresented or omitted material facts relating to those transactions … such as conflicts of interest and expenses related to the transfer.

*Kutten*, 2007 WL 2485001, at *4 (emphasis added), *aff'd*, 530 F.3d at 669-70; *Siepel*, 239 F.R.D. at 567-72, *aff'd*, 526 F.3d at 1126-28. The Eighth Circuit affirmed both rulings. *See Siepel*, 526 F.3d at 1126-28; *Kutten*, 530 F.3d at 669-70. The Eighth Circuit's decision in *Kutten* leaves no doubt that a complaint attacking an alleged "plan" to "funnel" trust assets into a mutual fund administered by a bank (or its affiliates), precisely as Plaintiff alleges here, implicates misstatements, omissions, and deception that trigger SLUSA. *See Kutten*, 530 F.3d at 669-70 (SLUSA applied notwithstanding assertions that the complaint did not "contain any allegations that facts were concealed").



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**3. Plaintiff's Allegations That The Bank Charged Excessive Fees In Connection With Affiliated Mutual Fund Investments Support The Conclusion That SLUSA Preempts Her Claims.**

Plaintiff also alleges repeatedly that the Bank and its affiliates charged excessive and improper fees for mutual fund management and other services. *See* Complaint, ¶¶ 3, 24, 26-28, 30-34. Numerous courts have found that a claim for excessive fees in connection with the purchase or sale of a security involves a claim of misrepresentation, omission or deceptive or manipulative conduct, triggering SLUSA preemption. *See Behlen*, 311 F.3d at 1094; *Dudek v. Prudential Securities, Inc.*, 295 F.3d 875-79 (8th Cir. 2007); *Beckett v. Mellon Investor Servs., LLC*, No. 06-5245, 2006 WL 3249189, at **2-3 (W.D. Wash. Nov. 8, 2006); *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp.2d 579, 603-04 (S.D.N.Y. 2006); *Dommert v. Raymond James Financial Servs.,* No. 06-102, 2007 WL 1018234, at *11 (E.D. Tex. Mar. 29, 2007).

In *Dudek*, for example, the plaintiffs alleged that annuities were improper investments because of excessive fees and argued that their claims were not preempted by SLUSA because "they were based upon the defendants['] excessive fees rather than misconduct 'in connection with' the sale of securities." *Behlen*, 311 F.3d at 1094 (summarizing *Dudek*, 295 F.3d at 878). The *Dudek* Court rejected the argument that the plaintiffs' complaint had nothing to do with misstatements, omissions, or deceptive or manipulative conduct. The court instead found that the gravamen of the plaintiffs' complaint "involved an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security." *Behlen*, 311 F.3d at 1094 (quoting *Dudek*, 295 F.3d at 879 (internal quotation marks omitted)); *see also Beckett*, 2006 WL 3249189, at *4 ("Claims that investment advisors breached fiduciary duties in charging unauthorized fees have been held to necessarily coincide with the sale or purchase of securities and are based in part on material omissions or the misrepresentations concerning the fees," even where plaintiff does not plead omission or misrepresentation).[17]

---

[17] The application of SLUSA to state law claims challenging excessive fees and expenses is not surprising. The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws. *See Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 131-32 (2nd Cir. 2000) (dismissing federal securities claims challenging disclosures about fees associated with money market mutual funds).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Similarly, in *Horattas v. Citigroup Financial Markets Inc.*, 532 F.Supp.2d 891(W.D. Mich. 2007), defendants were charged with mismanaging trust accounts by selling mutual funds and other securities held in the trusts and misappropriating trust assets. The Court held that SLUSA encompassed the claims. *Id.* at 897-903. The "presence of allegations of negligent management of the securities or imprudent investment of the trust funds cannot help [a plaintiff] escape the broad preemptive bar of SLUSA[.]" *Horattas*, 532 F.Supp.2d at 903; *see also Spencer*, 2006 WL 3408043, at **2-7 (allegations about mutual fund fees and claims for restitution of said fees function in a complaint to "connect" state law claims for breach of fiduciary duties to deceptive scheme to invest in mutual funds).

The above reasoning applies here. As *Dudek* and the related cases make clear, Plaintiff's allegations about excessive affiliated mutual fund fees necessarily and implicitly charge the Bank with untrue statements, omissions, or deceptive or manipulative conduct in connection with the purchase of covered securities. SLUSA's preemptive effect is triggered by these allegations as well.

### B. Plaintiff's Allegations Satisfy All The Elements Of SLUSA Preemption, And Her Complaint Is A Failed Attempt At Artful Pleading That Will Not Evade SLUSA.

Plaintiff previously has argued that SLUSA is not implicated here because her causes of action are not based on fraud or on "misstatements," "omissions," or "deception" concerning the sale of a covered security.[18] While many of the allegations in the Complaint show otherwise, SLUSA's preemptive reach is not as limited as Plaintiff maintains. To begin with, Plaintiff reads SLUSA's preemptive effect too narrowly in terms of the allegations it reaches. When considering a motion to dismiss under SLUSA, a court must carefully scrutinize the complaint's allegations to determine if the "gravamen" or "essence" of the complaint triggers SLUSA's preemptive effect. Courts must be wary of attempts to evade SLUSA through "artful pleading." *Dudek*, 295 F.3d at 879 (SLUSA preempts a state law class action when the "gravamen" or "essence" of the complaint involves an

---

18 As plaintiffs argued in the prior cases, in her Opposition to the Bank's prior Motion to Dismiss, Plaintiff argued that SLUSA does not apply here because her Complaint asserts non-fraud, class action claims for breach of fiduciary duties, generally avoids buzz words, like "misrepresentation," "omission," and "deception," and omits express references to disclosures that she received from the Bank in connection with the investment of trust assets in shares of affiliated mutual funds. *See* Plaintiff's Opposition, pp. 1-5, 8-10.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

untrue statement or omission of a material fact in connection with the purchase or sale of a covered security); *U.S. v. Saxton*, 494 F.3d, 833 (same); *In re Edward Jones Holders Litigation*, 453 F.Supp.2d at 1214-17 & n.7 (same). SLUSA preemption thus does not turn on whether a plaintiff's claims "sound in fraud" or formally accuse the Bank of breaching its disclosure obligations to beneficiaries; nor does it turn on the labels or buzz words used in a complaint. *See, e.g., Kutten.*, 530 F.3d at 670-71. Indeed, the *Kutten* Court referenced this issue and noted that the gravamen of the complaint was a plan to funnel trust assets into affiliated funds – precisely the same plan alleged here. *Id.* As *Kutten* illustrates, therefore, where – as here – a complaint reveals a deceptive or manipulative scheme in connection with the purchase of covered securities, the statute's preemptive effect is triggered.

As many courts also have held, a plaintiff may not "plead around" SLUSA by avoiding direct references to misrepresentations and omissions or the deceptive or manipulative aspects of an alleged scheme or by asserting only non-fraud state law claims. *See, e.g., In re Edward Jones Holders Litigation*, 453 F.Supp.2d at 1215 (a court must "'strictly scrutinize[] complaints … in order to prevent artful drafting from circumventing SLUSA preemption'") (quoting *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 301 (3rd Cir. 2005)); *Saxton*, 494 F.3d at 834-45 (SLUSA applied even after plaintiff filed post-removal amended complaint deliberately designed to evade SLUSA and effect a remand to state court).[19] While a complaint "facially" may assert non-fraud state law claims and studiously avoid express use of words like "misstatement," "omission," or "deception" and express references to non-disclosures, "the question is whether plaintiffs are engaging in artful pleading to disguise substantive allegations that [a defendant] engaged in '[a] misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security,' as those words are used in SLUSA, 15 U.S.C. § 78bb(f)(1)." *Felton v. Morgan Stanley Dean Witter & Co.*,

---

19 *See also Behlen*, 311 F.3d at 1095 (SLUSA applied, notwithstanding plaintiff's attempt to sanitize the complaint of references to misstatements, omissions, and deceptive and manipulative conduct); *Dudek*, 295 F.3d at 879-80 (SLUSA applied, notwithstanding plaintiff's attempt to delete allegations of fraud, misrepresentation, and omission); *In re Edward Jones Holders Litigation,* 453 F.Supp.2d at 1215 (same); *Araujo v. John Hancock Life Ins. Co.*, 206 F.Supp.2d 377, 384 (E.D.N.Y. 2002) ("The plaintiff argues that he may avoid SLUSA by omitting the allegations of fraud in the amended complaint. The Court disagrees.").



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

429 F.Supp.2d 684, 692-93 (S.D. N.Y. 2006) (footnotes omitted); *see also Kurz v. Fidelity Management & Research Co.*, No. 07-cv-709, 2008 WL 2397582, at *3 (S.D. Ill. June 10, 2008) (SLUSA applied notwithstanding the fact that plaintiff's complaint "scrupulously" avoided the buzz words of "fraud, misrepresentation, or omission," and included "a paragraph specifically disclaiming any such allegations"), *aff'd*, No. 08-2733, slip op. (7th Cir. Feb. 23, 2009).

In this case, Plaintiff's attempt at evasion is deliberate. She is attacking the *exact* same scheme and asserting the *exact* same state law class actions claims as *Siepel* and *Kutten*. In the words of the Consortium, however, Plaintiff's counsel simply has attempted to "purge" and "strip" her Complaint of direct references to the Bank's alleged "misstatements," "omissions," and failures to disclose, as well as references to the content of disclosures actually provided to trust beneficiaries. But that sort of editing has been condemned in prior cases, just as it should be now. *See Felton*, 429 F.Supp.2d at 693; *Siepel*, 239 F.R.D. at 570-72 (denying leave to amend where amended complaint simply aimed to "mask" allegations of misrepresentations and omissions and thus was improper and futile), *aff'd*, 526 F.3d at 1127-28 (8th Cir. 2008); *Kutten*, 2007 WL 2485001, at **4-8 (addressing similar claims and rejecting the argument that SLUSA did not apply because allegations of fraud, misrepresentations, omissions, and deception were "ancillary" to breach of fiduciary duty claims), *aff'd*, 530 F.3d at 669-70; *Segal*, 2008 WL 819290, at *4 (finding SLUSA preemption despite plaintiff's assertions that she was not bringing claims based upon misrepresentations, omissions, or failure to disclose in connection with the purchase of securities at issue); *Dommert*, 2007 WL 1018234, at **7-8 (same).

The analysis in *Segal*, 2008 WL 819290, at ** 3-7, is illustrative. There, plaintiffs, via the Consortium, attempted to evade SLUSA by omitting the words "misrepresentation" and "omission" and expressly alleging that their state law class action claims for breach of contract and fiduciary duty were "not based upon any misrepresentation, or failure to disclose, or fraudulent scheme." *Id.* at **3-4. Consistent with controlling law, however, the court looked beyond the plaintiffs' artful allegations to the substance of the pleading. The court found plaintiffs' claims were preempted by SLUSA because the gravamen of the complaint reflected precisely the kind of deceptive and manipulative conduct that SLUSA was enacted to preempt:

> The fact that Plaintiffs avoid using the words "misrepresentation" and "omission" does not control the result. It is clear that the court can and should disregard the particular labels or titles Plaintiffs may affix to their claims when determining if SLUSA precludes those claims. It is the substance of the allegations about the defendants' conduct that is key to this determination.
>
> ...
>
> Here, ... Plaintiffs allege that increased account fees resulted from Defendants' "asset allocation" decisions (¶ 7); that the bank enriched itself by making those "asset allocations" (¶ 9); and that the Bank engaged in self-dealing by investing in its proprietary funds rather than "independently analyz[ing] and monitor[ing] trust assets."(¶ 14)

*Id.* at *4 (emphasis added).

In the words of the *Segal* Court, "[w]hatever the state law mold these allegations may also fit, it is inescapable that the key conduct underlying all the claims is the Bank's misrepresentations or omissions about, or deceptive scheme involving, the Bank's purchase of its proprietary mutual funds with fiduciary assets. All of the class allegations of self-dealing, breach of duty, or unjust enrichment, flow from that central fact. While the alleged misconduct may have breached a contract or a fiduciary duty, it is also a 'quintessential example of a fraudulent omission of a material fact under the federal securities laws.'" *Id.* Plaintiff accordingly cannot avoid SLUSA's preemptive effect by sanitizing her Complaint of allegations that would properly bring her claims within the statute. The Complaint is subject to dismissal for this independent reason as well.

## IV. CONCLUSION

The Bank requests that that Court invoke its inherent authority and dismiss Plaintiff's Complaint, with prejudice, based upon pervasive forum shopping. In the alternative, the Bank requests that the Court follow the well reasoned decisions in *Siepel*, *Kutten*, and the many other cases addressing these very issues and dismiss Plaintiff's claims as preempted by SLUSA.

DATED: April 3, 2009

Respectfully Submitted,

REED SMITH LLP

By /s/ Mary J. Hackett
James C. Martin
Mary J. Hackett
David S. Reidy
*Attorneys for Defendants Bank of America, N.A. and Bank of America Corporation*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware