GILMUR R. MURRAY (SBN #111856)
DEREK G. HOWARD (SBN #118082)
**MURRAY & HOWARD, LLP**
900 Larkspur Landing Circle, Suite 103
Larkspur, CA 94939
Telephone: (415) 461-3200
Facsimile: (415) 461-3208
gmurray@murrayhowardlaw.com
dhoward@murrayhowardlaw.com

NIALL P. McCARTHY (SBN #160175)
LAURA SCHLICHTMANN (SBN #169699)
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
nmccarthy@cpmlegal.com
lschlichtmann@cpmlegal.com

Attorneys for Plaintiff and the Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ELLEN STOODY-BROSER**, an Individual, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**BANK OF AMERICA, N.A.**, and **BANK OF AMERICA CORPORATION**,<br><br>Defendants. | No. CV 08-2705 JSW (WDB)<br><br>**CLASS ACTION**<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>Date: April 22, 2009<br>Time: 4:00 p.m.<br>Ctrm: Courtroom 4, 3rd Floor (Oakland)<br>Hon. Wayne D. Brazil<br><br>Compl. Filed: May 29, 2008<br>Trial Date: Not set |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION AND SUMMARY OF REPLY . . . 1

II. DEFENDANTS' OPPOSITION MISREPRESENTS EVENTS . . . 2

A. Defendants Deliberately Concealed the Non-Party Subpoenas . . . 2

B. The Second Round of Document Subpoenas and Related Discovery Also Demonstrate the Ongoing Pattern of Defendants' Abusive Practices . . . 5

C. Plaintiff Has Consistently Made Thorough and Good Faith Efforts to Meet and Confer . . . 7

D. Plaintiff's Production Neither Withheld Nor Redacted Documents on the Basis of "Common Interest" Privilege . . . 10

E. Plaintiff's Motion Is Not Moot . . . 11

III. CONCLUSION . . . 11

# TABLE OF AUTHORITIES

**Page**

## CASES

*American Casualty Co. v. Krieger*, 160 F.R.D. 582 (S.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . 12

*Franklin v. Allstate Corp.*, No. 06-1909, 2008 U.S. Dist. LEXIS 28214 (N.D. Cal. Feb. 29, 2008) . . . . . . . . . . 12

*Halaco Eng'g Co. v. Costle*, 843 F.2d 376 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1991) . . . . . . . 5

## STATUTES AND RULES

Federal Rules of Civil Procedure 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rules of Civil Procedure 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Federal Rules of Civil Procedure 45, advisory committee's note, 1991 amendment, subd. (b) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Federal Rules of Civil Procedure 45(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rules of Civil Procedure 45(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I. INTRODUCTION AND SUMMARY OF REPLY

As Plaintiff established in her moving papers, this case reflects the continuation of her attorneys' history, going back to the mid-1990s, of several successful California-based class actions that provided, altogether, well over a hundred million dollars of relief to trust beneficiaries who had been cheated by their corporate trustees – including Bank of America. Defendants' counsel ignores this history. They suggest that Plaintiff's counsel instead is somehow in the thrall of, and acts at the "behest" of, a group of non-California plaintiffs' attorneys going back to – 2006.[1] Defendants have relied on this baseless contention to pursue two rounds of oppressive, improper discovery of Plaintiff's attorneys, plus several subpoenas served on non-parties to this case without so much as copying Plaintiff's attorneys, all of which have led Plaintiff to move for a protective order.

This reply addresses several of the bigger distortions in Defendants' opposition, starting with Defendants' revisionist history of their most recent discovery abuse: their covert service of document subpoenas, in this case, on non-party attorneys. This episode leaves no room for doubt that Defendants' repeated discovery abuses have been deliberate. The same applies to their pattern of serving oppressive and improper discovery demands, insisting on their right to invade multiple privileges, only to drop the demands at the last minute after Plaintiffs' counsel seeks the Court's intervention. Defendants' argument that Plaintiff has failed to make a good faith effort to meet and confer is pure fabrication, as her letters attest.

---

[1] As explained in Plaintiff's moving papers (doc. no. 73 at 1:11-22 and n.1), three sets of attorneys figure in this motion:

(1) Cotchett, Pitre & McCarthy and Murray & Howard, LLP ("**CPM/M&H**," also referred to herein as "Plaintiff"), who represent Plaintiff here, and who represent the plaintiffs in the state court *Richtenburg* case against Wells Fargo, N.A.;

(2) Reed Smith, LLP ("**Reed Smith**," also referred to herein as "Defendant" – their clients in this case), which represents the defendants in all pending or recent class actions for breach of trust brought against Bank of America, inside and outside California, and has also taken over representation of Wells Fargo in *Richtenburg*; and

(3) the plaintiffs' attorneys in the various pending or recent class actions for breach of trust brought against Bank of America outside California (herein referred to collectively as "**non-California class counsel**").

In particular, Defendants' references to the discussion of "common interest" privilege in one of Plaintiff's meet and confer letters pointedly ignore a key paragraph. That paragraph states that, in this instance (in a good faith effort to comply with the Court's Order permitting Defendants "limited discovery" (emphasis added)), "we drew the line differently" and in fact produced e-mail correspondence with the non-California attorneys about recent trust law class actions against Bank of America. Thus, though the Court would not know it from Defendants' opposition, Plaintiff withheld no e-mails on grounds of common interest privilege. Instead, a small number of e-mails were withheld or – in a few cases, and sparingly – redacted insofar as the contents were not about Bank of America. (Plaintiffs would be prepared to submit to in camera review to substantiate this.)

Finally, as discussed below, Plaintiff's motion has not been mooted by Defendants' latest ploy. Instead, it has become even more clear that Defendants' repeated discovery abuse can only be ended by a protective order.

## II. DEFENDANTS' OPPOSITION MISREPRESENTS EVENTS

### A. Defendants Deliberately Concealed the Non-Party Subpoenas

Defendants' account of the non-party subpoenas is full of distortion from beginning to end. (See Opp. Mem. at 13:1-14:11.) In addition, this episode is the third in four months in which Defendants have manifested their disregard for the discovery rules and for this Court's power to maintain proper conduct of proceedings before it.

Their bland introductory statement, "In late January, the Bank asked Plaintiff's counsel and the Consortium to accept service of the subpoenas" (*id.* at 13:2-3), is sheer obfuscation. It provides no citation to evidence, for good reason. The evidence reveals that Defendants sent Plaintiff's counsel an e-mail regarding service of the subpoenas directed to them, but sent them nothing to indicate that they intended to issue document subpoenas in this case to the non-California attorneys. See Schlichtmann Decl., ¶¶ 3-4 & Exh. A.

Defendants' assertion that their failure to serve the non-party subpoenas on Plaintiffs' counsel was "inadvertent[]" (Opp. Mem. at 13:8) is not credible in view of the history of these subpoenas. Defendants failed to serve Plaintiffs' counsel with prior notice of any of the several

non-party subpoenas, as plainly required by Rule 45(b)(1) of the Federal Rules of Civil Procedure – a rule designed to provide opposing parties adequate time to object. (Fed. R. Civ. P. 45 advisory committee's note, 1991 amendment, subd. (b): "The purpose of [added requirement of prior] notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.") Defendants failed even to provide a simultaneous service copy of any of the non-party subpoenas. That still would have violated the Rule, but it would have made Defendants' tale of inadvertence more plausible.

But subsequent events underscore the deliberateness of Defendants' violation of Rule 45. On February 27, 2009, when Plaintiffs' counsel learned of the non-party subpoenas and promptly demanded that opposing counsel provide copies, opposing counsel advised Plaintiff's counsel that they would have to wait until March 2 for copies.[2/] Furthermore, opposing counsel did not actually provide the copies until the afternoon of March 3. (See McCarthy Decl., ¶¶ 15-18 and Exhs. W-BB.) Thus, Defendants' assertion that "[a]s soon as the oversight was discovered, the Bank's counsel moved to correct the omission and provided Plaintiff and her counsel with the subpoenas and the documents produced in response" is false.

The reason for Defendants' delay became only too clear when the subpoenas finally were provided, on the afternoon of March 3, 2009.[3/] Two of the subpoenas demanded production of documents, in Manhattan, the following morning. (Schlichtmann Decl., Exh. B (last two subpoenas).) The other two demanded production two days later. (*Id.* (first two subpoenas).) The subpoenas did not identify phone numbers, fax numbers, or e-mail addresses for the recipients. As a result, there was no practical way for Plaintiff's counsel to reach two of the non-party recipients, to advise them that the subpoenas had been served in violation of the Federal

---

[2] See McCarthy Decl., Exh. X (top e-mail on first page): "We are out today, but we will email [the subpoenas] on Monday." (The McCarthy declaration was filed with Plaintiff's moving papers.) This only underscores Defendants' bad faith in this matter: if counsel could reach McCarthy by e-mail – as she did – she could reach someone in her office with directions to forward the subpoenas the same afternoon, by e-mail or fax.

[3] They were e-mailed only to Niall McCarthy, delaying their receipt by the rest of Plaintiff's attorneys. (See McCarthy Decl., Exhs. Z, BB.)

Rules, until their response was either completed or imminent. (*Id.*, ¶ 5.)[4/][5/]

Defendants argue that "Plaintiff's sole objection to the subpoenas remains that the subpoenas were not served on her before they were served on the Consortium" (Opp. Mem. at 14:8-9); that the non-party recipients really didn't produce much, anyway (*id.* at 14:5-6); and that this Court is unable to address the matter, in any case, because "only the court that issues a subpoena has the authority to modify or quash it" (*id.* at 17:24-25).[6/] But they fail to note the significance of the Federal Rules's contemplation that the issuing court would act "[o]n timely motion" (Fed. R. Civ. P. 45(c)(3)). <u>Defendants' covert issuance of the non-party subpoenas and their further deliberate delays after February 27 made "timely motion" impossible</u>.

The real issues here are (1) the fact that Defendants committed multiple violations of Rule 45; (2) the evidence that these violations were deliberate, not the result of "inadvertence"; and (3) the circumstance that these violations represent the <u>third episode</u> of Defendants' abusive discovery tactics in this case <u>in just four months</u>. This Court has the power to uphold the propriety of its proceeding. Defendants' suggestion that the Court is helpless to do so is no longer surprising, in view of their conduct over the past several months, but should not be left

---

[4] Plaintiff's counsel ultimately advised each of the non-party subpoena recipients about Defendants' violation of Rule 45. (*Id.*, ¶ 5.)

[5] Defendants point out that Brower Piven "chose to respond to the subpoena anyway" even after receiving Plaintiff's letter. (Opp. Mem. at 14:1-3.) Brower Piven provided all of two documents: the March 3, 2009, letter from Plaintiff's counsel; and a September 8, 2008, e-mail attaching a filing in this case that is readily available to attorneys on PACER. (DeVyver Decl., Exh. 17.)

Defendants also assert that no non-party moved to quash the subpoenas or refused to produce documents. (Opp. Mem. at 14:10-11.) With respect to the first point, the non-party had no way of realizing that the subpoenas had been improperly served until Plaintiff's counsel contacted them. As for the second point, this is accurate only to the extent that objections and withholding are not equated with refusal to produce. In fact, Defendants themselves complain about how little the non-California attorneys produced (citing reasons that Plaintiff's counsel could have had no knowledge of (*see* Opp. Mem. at 14: 23-26, n.8) and admit that Plaintiff's counsel here produce "the bulk of the record" produced to them. (*See* Opp. Mem. at 14:4-12.) Like all the other evidence, this demonstrates that Plaintiff's counsel and the non-California attorneys in the other cases have consistently operated independently of each other, rather than colluding behind the scenes on a grand litigation strategy as contended by Defendants.

[6] For example, while the Cobrinik subpoena was issued in this case, the issuing court was the Southern District of New York. (See Schlichtmann Decl., ¶ 5 & Exh. B.)

unrefuted. It may be too late to quash the non-party subpoenas, but it is not too late to prohibit further litigation abuses by Defendants; it is not too late to require them to issue curative notices to the non-party recipients acknowledging their violation of Rule 45; and it is not too late to sanction them for the unjust burden and costs that they have imposed. District courts have inherent power to impose discovery sanctions in order to maintain proper order in the proceedings before them. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 367 (9th Cir. 1991); *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379-80 (9th Cir. 1988).

### B. The Second Round of Document Subpoenas and Related Discovery Also Demonstrate the Ongoing Pattern of Defendants' Abusive Practices

Defendants do not even attempt to defend the substance of their second round of discovery, including the subpoenas directed to Plaintiff's counsel. Instead, they submit that the second round of discovery is now "moot" because, once again, now that Plaintiff has sought a protective order, they have suddenly decided not to pursue the second round any further. Indeed, as shown in Plaintiff's moving papers, this second round not only ignored the Court's direction to serve "limited" discovery but was replete with substantively indefensible demands. (See discussion and excerpts at Pltf's Mtn., pp. 11:7-13:3, including without limitation n.5 at 11:19-28, and McCarthy Decl., Exhs. H - L.)

Defendants also insist that it was wrong for Plaintiff to bring this motion when they "did not threaten a motion to compel." (Opp. Mem. at 1:16.) This is another falsehood.

Not only did Mr. deVyver's letter of February 12, 2009, start with an admonition to "consider this letter to be Bank of America's efforts to meet and confer regarding [Plaintiff's objections] pursuant to the Federal Rules of Civil Procedure" (clearly implying that a motion to compel would be forthcoming if Plaintiff did not give in to Defendants' improper demands), but the second page included this message:

> . . . Please reconsider the redactions and your refusal to produce documents. If you do not, we will move to compel.[7]

---

[7] Defendants continue to complain about redactions in the e-mails produced by Plaintiff. Not only are they limited in frequency, but they were properly made to omit contents that were not about the Bank of America. This is true of every redaction in Defendants' Exhibit 10. If necessary, Plaintiff would submit the unredacted e-mails to the Court for in

(McCarthy Decl., Exh. S, second paragraph and p. 2, end of first full paragraph, respectively.) The message was reinforced in Mr. deVyver's letter of March 3, 2009, which declared as follows:

> . . . it appears that we are at an impasse on most of these discovery issues. Bank of America will proceed with taking whatever actions it deems necessary to protect its interests in this matter, including, if appropriate, seeking a waiver of the attorney-client privilege and work product doctrine . . . .

(McCarthy Decl., Exh. AA, first paragraph.) Thus, the statement that "discovery is on-going" in Defendants' March 11, 2009, filing (doc. 70 at 1:25) was only the latest of a consistent series of explicit or implicit statements of Defendants' intent to pursue further responses and bring a motion to compel if Plaintiff did not acquiesce. Defendants switched course – as in December 2008 – only after Plaintiff filed her motion for a protective order. Even then, just as in December 2008, the only "notification" that Defendants provided to Plaintiff of their reversal of course took the form of a court filing. (See Def. Mem. 6 at 6:5-7.)

By itself, Defendants' second round of discovery – which their lead attorney admits to be "comprehensive" rather than "limited" (see McCarthy Decl., Exh. N) – and their subsequent insistence on responses that they were not entitled to, only to abruptly withdraw when Plaintiff filed her motion, would warrant a protective order and sanctions to prohibit them from engaging in future discovery misconduct. Coupled with the revelation of their secret subpoenas to non-parties, the need for the Court to rein in Defendants' abusive tactics could not be any more clear.

---

camera review to substantiate this point. Furthermore, Defendants' suggestion that the redactions were "heavy" is belied by the redactions that they included with their papers. For example, the first e-mail in Defendants' Exhibit 10, Bates MH00167, redacts a two-word subject line and the first line of text. MH00142 is a short pair of e-mails, almost entirely about a non-Bank of America case; accordingly, all but the sender, recipient, date, and message "what is new on your end?" on the later of two messages was redacted. MH00131-32 – almost entirely not about Bank of America, and therefore more fully redacted – is repeated in the body of MH00119-20, as is obvious from MH00119. MH00116 redacts three words that are not about Bank of America. MH00111 redacts the two initial lines, which are not about Bank of America.

### C. Plaintiff Has Consistently Made Thorough and Good Faith Efforts to Meet and Confer

Contrary to Defendants' characterization,[8] Plaintiff has consistently made prompt, thorough, good faith efforts to meet and confer about Defendants' discovery. Further, Plaintiff both summarized those efforts in her moving papers and attached her meet and confer correspondence to the McCarthy Declaration. Consequently, Defendants' arguments that Plaintiff's motion should be denied either because of inadequate meet and confer efforts or because she failed to "certify" to the Court that she had tried to resolve the dispute voluntarily are equally without merit.[9] Plaintiff has satisfied the requirements of Local Rule 37-1(a).

In the second round of document subpoenas, as Plaintiff's moving papers showed, Defendants allowed only a couple weeks to respond to document demands of extraordinary scope and intrusiveness, advising Plaintiff that this tight time frame was intentional. (See Pltf's Mtn. at 11:8-13; *id.* at 11:13-13:3; McCarthy Decl., Exh. L, first paragraph.) Within only a few days of receiving the subpoenas and other discovery (served during the week of the King holiday and the Obama Inauguration) – as Plaintiff's moving papers also show – Plaintiff's counsel sent Defendants a two-page meet and confer. (McCarthy Decl., Exh. M.)

Plaintiff's letter, dated January 26, 2009, reminded Defendants that the Court had allowed only "limited" discovery. (*Id.*, first page.) It pointed out that the new discovery was actually broader and more objectionable than the discovery that Defendants had served in November 2008,[10] ranging into work product and privileged communications concerning *Richtenburg v.*

---

[8] See, e.g, Opp. Mem. at 1:23-24 ("If Plaintiffs [sic] had just complied with their [sic] meet and confer obligations, this Motion could and should have been avoided. Accordingly, this Court should deny Plaintiff's Motion because Plaintiff failed to comply with meet and confer requirements").

[9] To be sure, as discussed in the preceding sentence, Defendants' secret service of subpoenas on non-parties and their subsequent delay in providing copies of the subpoenas to Plaintiff, once detected, prevented voluntary resolution of the merits of that specific dispute. The matter continues to warrant the Court's intervention as one of several prominent and unmistakable examples of Defendants' rampant discovery abuse in this case.

[10] As set forth in Plaintiff's moving papers, this was the first occasion for Plaintiff to seek a protective order, in response to which Defendants withdrew the discovery in its entirety – in court, at the last minute, without any previous notice to Plaintiff.

*Wells Fargo Bank, N.A.* – where, not coincidentally, Reed Smith had taken over lead representation of the defendant. (*Id.* at pp. 1-2.) The letter pointed out the attempted trickery reflected in Defendants' inconsistent definitions. (*Id.* at p. 2.) In view of the short time afforded for the responses of Plaintiffs and her attorneys, the letter advised Defendants that, in compliance with the Court's Order allowing "limited" discovery, Plaintiff would provide a record of communications with the non-California attorneys about breach of trust class actions against Bank of America, and that Plaintiff would "provide truthful answers to the interrogatories directed to 'you,' which we will define to include her alone." (*Id.* at p. 2.)

Defendants replied to Plaintiff's letter, acknowledging that the new discovery was "comprehensive" despite the Court's limitation. (McCarthy Decl., Exh. N.) Defendants' letter contained a supposed offer to confer about specific objectionable discovery items. (*Id.*) In view of the intentionally tight deadline that Defendants had set for the subpoena responses coupled with the pervasive overbreadth and intrusiveness of Defendants' discovery, this was not a good faith response. Plaintiff instead went ahead with the objections, responses, and production that she had already advised Defendants she would make. (See McCarthy Decl., Exhs. O - R.)

After that, Defendants sent the February 12, 2009, letter discussed in the preceding section, in which they expressly warned that they would move to compel unless Plaintiff abandoned all her objections and redactions. (McCarthy Decl., Exh. S.) Plaintiff responded with a six-page letter, dated February 18, 2009. (McCarthy Decl., Exh. T.) The February 18 letter addressed Defendants' demands; stated that, despite the potential availability of the "common interest" privilege, in light of the Court's Order, Plaintiff had in fact produced written communications between CPM/M&H and the non-California attorneys about the recent trust law class actions brought against Bank of America; and then turned to such particulars items of

dispute as attorney time records, privilege logs,[11] and e-mail attachments.[12]

Plaintiff received no direct response to her February 18 letter for an extended time. (McCarthy Decl., ¶ 15.) Instead, less than ten days letter, her counsel learned of the subpoenas that Defendants had secretly served on the several non-parties. (*Id.*) As part of their improperly delayed response to Plaintiff's demand for copies of the subpoenas, Defendants included the March 3, 2009, letter, declaring that the parties were at "impasse" and that Defendants would proceed to "tak[e] whatever actions it deems necessary to protect its interests in this matter." (McCarthy Decl., Exh. AA.)

As demonstrated above and in Plaintiff's moving papers, Defendants' attack on the adequacy of her meet and confer efforts falls as wide of the mark as all their other arguments.[13]

---

[11] Plaintiff's February 18, 2009, letter cited to Defendants authorities for her position that disputes as to the scope of discovery must be resolved before privilege logs can be required. (See McCarthy Decl., Exh. T, at p. 5.) The categorical privilege logs that Plaintiff produced served the purpose of indicating on which bases she had withheld or redacted any documents.

[12] Plaintiff's February 18, 2009, letter pointed out that her production included two voluminous attachments, which appeared to be attached to more than one of the e-mails produced: a hearing transcript and a redacted deposition transcript. It added that

> . . . it appears that most e-mail attachments either were duplicates of these two documents, or copies of documents on file in cases that you are participating in; one is a "notepad" file of a deposition transcript exceeding 300 pages in length. . . . [P]lease clarify whether you are actually demanding duplicate copies of long transcripts, copies of documents already in the public file of cases you are participating in, and unformatted early copies of deposition transcripts.

(McCarthy Decl., Exh. T, pp. 5-6.)

[13] Again and again, Defendants fail to get their stories straight. They have gone back and forth, and back again, on whether they did or did not oppose Plaintiff's November 2008 motion for protective order. (Answer: no, they simply withdrew their subpoenas at the last minute, when their opposition was due. See Doc. 65.) They feign consternation that Plaintiff would again move for a protective order when they – according to Defendants' Opposition – were not threatening a motion to compel. As documented above, this likewise is untrue. They also complain, on page 10 of their opposition, that "Plaintiff gave Bank no prior notice that she would be seeking a protective order and made no effort to meet and confer" (Def. Opp. at 10:24-25) – when just two pages earlier, they quote one such explicit notice (see *id.* at 8:16-19; see also *id.* at 13:26-27 (quoting Plaintiff's warning that she would seek protective order regarding the subpoenas)); and the record establishes the opposite about Plaintiff's repeated and thorough meet and confer efforts.

### D. Plaintiff's Production Neither Withheld Nor Redacted Documents on the Basis of "Common Interest" Privilege

Defendants portray Plaintiff as having "invoked the common interest privilege" in denying them all the discovery responses they demanded. (See Opp. Mem. at 9:8-10:22.) This is not true. Plaintiff's February 18, 2009, letter, pointed out that Defendants' position that communication among counsel on the same side of the same legal issue in separate litigation was somehow improper was both inconsistent with the conduct of Defendants' counsel and contrary to the law that has developed regarding the "common interest" privilege. (McCarthy Decl., Exh. T, pp. 1-4.)

Nevertheless, Plaintiff also made clear that her production of written communications between CPM/M&H and the non-California plaintiffs' attorneys neither withheld nor redacted documents on this basis:

> As a general rule, we would have objected to far more of the contents of your document subpoenas and other discovery on this basis. However, in light of the Court's order allowing "limited discovery," we drew the line differently in this instance: we produced written communications between either . . . CPM . . . or M&H . . ., on one side, and any of the attorneys in the Greenfield group, on the other side, with respect to trust law class actions brought against Bank of America. The record thus produced clearly establishes that (1) there is no financial arrangement between the Greenfield group, or any of the individuals or firms so designated, and either CPM or M&H and (2) neither Greenfield nor any of the other attorneys in that group has ever controlled or directed any of the CPM and/or M&H litigation.

(McCarthy Decl., Exh. T, p. 4 (emphasis added.) As Plaintiff's privilege logs make clear, she withheld or redacted documents that were not about Bank of America, and properly so.

If Defendants had really had a good faith suspicion – however far-fetched – that the non-California attorneys were calling the shots in this case, both Plaintiff's production and the record established in Plaintiff's moving papers would have put them to rest. The fact that Defendants continue to insist that Plaintiff owes them privileged materials, that Plaintiff's attorneys are improperly colluding with the non-California attorneys, and that they have done nothing wrong in repeatedly subjecting Plaintiff to grossly overbroad and intrusive discovery and in flouting Rule 45 betrays the oppressive and harassing motivations behind all the discovery they have undertaken against Plaintiff and her attorneys.

**E. Plaintiff's Motion Is Not Moot**

Defendants acknowledge only part of the relief sought by Plaintiff's motion for a protective order. They omit her request that the Court require Defendants' counsel to acknowledge in writing their Rule 45 violations to the recipients of the non-party subpoenas, as a curative measure. They ignore the discussion in Plaintiff's moving papers about courts' regard of mere requests to depose current opposing as good cause for a protective order under Rule 26(c) unless the requesting party makes the good cause showing that Defendants refused to make here, in response to Plaintiff's meet and confer correspondence. And they obviously think they can continue to get away with burdening Plaintiff and her counsel with oppressive and harassing discovery, then withdraw it at the last moment, wasting the time and resources not only of Plaintiff's counsel, but also of the Court.

As Plaintiff has shown, after first serving and then abruptly withdrawing overbroad and improper discovery in November 2008, Defendants turned around and demanded even more oppressive and improper discovery, disregarding the Court's instruction that their discovery should be "limited." Next, they served secret subpoenas and prevented Plaintiff from seeing them until the responses were due. Their pattern over the past four months, as well as their inconsistent stories about what they have been doing (see discussion above), indicates plainly that their motivations all along have been improper, designed to harass and oppress CPM and M&H, who historically have held Defendants to account for cheating trust beneficiaries.

In view of the contempt that Defendants' counsel has manifested for the discovery rules, the Court's Order allowing "limited" discovery, and the Court's power to maintain the orderly and just conduct of proceedings before it, the Court should exercise its inherent power to control its caseload by putting a halt to Defendants' misconduct here. Accordingly, Plaintiff respectfully seeks the relief indicated below.

**III. CONCLUSION**

For the reasons discussed in her moving papers and above, Plaintiff respectfully requests that the Court issue a protective order that does all of the following:

(1) Restricts the scope of the discovery responses that she and her counsel are obligated to produce to Defendants with respect to the alleged "forum shopping"

issue to the interrogatory responses, documents, and categorical privilege logs already produced;

(2) Prohibits Reed Smith from deposing, or noticing or subpoenaing for deposition, any of Plaintiff's attorneys, at least until such time as Reed Smith makes the required showing to the Court pursuant to *American Casualty Co. v. Krieger*, 160 F.R.D. 582, 588 n.3 (S.D. Cal. 1995), and *Franklin v. Allstate Corp.*, No. 06-1909, 2008 U.S. Dist. LEXIS 28214, *2-3 (N.D. Cal. Feb. 29, 2008);

(3) Declares the invalidity of all of Reed Smith's subpoenas to date on non-parties to this case, and requires Reed Smith to (i) acknowledge to the recipients of those subpoenas, in writing, its violation of Rule 45, and provide proof of such written acknowledgment to the Court and Plaintiff's counsel; (ii) compensate the recipients for the costs of their compliance with the improperly served subpoenas, and (iii) refrain from issuing similar subpoenas in the future in this litigation; and

(4) Order sanctions against Reed Smith in an amount that will compensate Plaintiff's attorneys for the costs that they have incurred in responding to the November 2008 *Kutten* subpoenas, the grossly overbroad January 2009 discovery in this case, and the February 2009 subpoenas in this cases that were served on non-parties without prior notice to (or even simultaneous service on) Plaintiff's counsel.

Date: April 13, 2009

**COTCHETT, PITRE & McCARTHY**
**MURRAY & HOWARD, LLP**

By: <u>/s/ *Laura E. Schlichtmann*</u>
Laura Schlichtmann

Attorneys for Plaintiff and the Class